**People of the State of Illinois, Plaintiff-Appellee, v. Larry Thomas, Defendant-Appellant.**

**Gen. No. 51, 457.**

First District, Fourth Division.

February 3, 1967.

Sherwin M. Winer, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney in Charge of Appeals, Criminal Division and Theodore M. Swain, Assistant State's Attorney, of counsel) for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

**Charge:** Voluntary manslaughter.[1]

**Defense at Trial:** Justifiable use of force in defense of person.[2]

**Judgment:** After a finding of guilty in a trial before a jury the court imposed a sentence of eight to twenty years in the Illinois State Penitentiary.

**Point Raised on Appeal:** The charge was not proved beyond a reasonable doubt inasmuch as the State did

---

[1] Ill Rev Stats 1963, c 38, § 9-2(b): A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable.

[2] Ill Rev Stats 1963, c 38, § 7-1: A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony.

not prove beyond a reasonable doubt that the defendant was not acting in self-defense.

**Evidence:** The deceased and the defendant were employed at a restaurant.

**Testimony of State Witnesses:** Henry Ray Jones, an employee in the same restaurant, testified that on July 28, 1963, they were all at work, and that Lorinza Spight, deceased, had sold Larry Thomas, defendant, a watch for $10; that after examining the watch Thomas decided he didn't want it and asked for his money back; that Spight said he was not going to return the money, and a tussle then resulted in the back kitchen, but no one was hurt. The witness stated that he later entered the front kitchen and heard a bumping noise; that when he went around the wall he saw the two men tussling, and when he tried to stop them the defendant "pulled a knife and started cutting."

Stella Thacker testified that while she was in the pantry she heard a noise of bumping against the wall; that she did not go out at that time to look, but that subsequently she saw the defendant cutting Spight on the neck; and that she did not know whether or not Spight had anything in his hand.

Edward Cermak, another employee of the restaurant, testified that he heard a crash; that when he went into the kitchen to see what had happened he saw the two men, Spight and the defendant, tussling; and that the defendant had a knife in his hand, which the witness thought was a razor. He further stated that there was only one meat cleaver which was kept in the back kitchen in the chef's drawer,[3] where it was found when the police arrived about 45 minutes later. On cross-examination Cermak was questioned as to whether someone could have taken the cleaver out and put it back in the

---

[3] The question of the availability of the cleaver is important when we consider the defendant's testimony that the deceased threw a meat cleaver at him.

90

drawer; he answered that it would have been impossible because when the drawer was opened the cleaver was down under the other knives, and that the cleaver was actually used only about once in two weeks.

██ ██ Charles Dacox, another employee of the restaurant, testified that Spight and the defendant were in the front kitchen behind a partition; that "the deceased was backing out from behind the partition, with the defendant following him, slashing"; that the defendant had a weapon in his hand, but the witness could not tell if it was a razor or what; and that there was nothing in Spight's hands. The witness' testimony continued: "after they came out from behind the partition, the deceased grabbed a tray or rack in which we kept glasses in, to protect himself. At this point I don't know if the glass rack fell out of his hands or if it was knocked out of his hands." He stated that the defendant had a weapon in his hands and was slashing at Spight, "but at this time I observed a gash and blood streaming down his shirt"; that the gash was on the back of his neck. The witness further testified that Spight had a gash on the face line somewhere around the nose, over the cheek line; that there was blood streaming down his face, and that his clothing was covered with blood. He added that when Spight started to slump down the defendant used profane language and said "I will kill you," then stabbed Spight "somewhere along the chest line, or the belly line." The witness testified that he called a policeman, reported the incident and that he and the police officer pursued the defendant; that the officer arrested the defendant, at which time he recovered a knife from the defendant's possession.[4]

---

[4] Most of the evidence of Dacox was taken from the record. It does not appear in the abstract. An elementary principle in appellate practice is that the appellant shall prepare a fair abstract. An abstract which omits important evidence against the appellant-defendant is not a fair abstract.

**Testimony of Defendant:** Larry Thomas testified concerning the dispute over the watch and stated that he had paid the deceased $10 for it, found the crystal was broken, and demanded his money back, at which time the deceased told him he would not refund his money; that the deceased then grabbed him and slammed him against the wall; that following the incident he, the defendant, went about his work. He stated that when he was leaving the restaurant at 8 o'clock he met the deceased going into the front; that the deceased knocked him down, kicked him, got a meat cleaver, and when the defendant tried to get away, threw the meat cleaver at him. He stated that the deceased then grabbed a big rack which was used for holding glasses, swung the rack and hit the defendant with it; that the defendant then took out his knife because he was scared, and swung a couple of times at the deceased.

■ ■ OPINION: The defendant relies on People v. Smith, 404 Ill 350, 88 NE2d 834, where the court held that a conviction must be reversed if there is insufficient credible evidence to create an abiding conviction that the defendant is guilty beyond a reasonable doubt, and that if the defendant is not the first assailant in a place where he has a lawful right to be and is put in apparent danger of his life or of suffering great bodily harm, he need not attempt to escape but may lawfully stand his ground and meet force with force even to the taking of his assailant's life. There is no question that the court in that case properly laid down the law. However, it is not applicable in the instant case where the facts do not fall within the scope of the rule stated in the cited case.

The evidence in the instant case is contradictory. The defendant claims that the deceased attacked him with

a meat cleaver. In answer to that the State puts on evidence that there was only one meat cleaver in the restaurant; that it was kept in a drawer under a number of other knives because it was seldom used, and that shortly after the death of the deceased and the arrival of the police, the cleaver was found in the same drawer under several other knives.

The defendant testified that the deceased attacked him first with a glass rack, swinging with it and hitting the defendant; that the defendant then took out his knife. On the other hand, the State's witness, Dacox, testified that he saw the deceased backing out from behind the partition with the defendant following him, slashing at him, and that *after* they came out the deceased grabbed the glass rack to protect himself. He further stated that at that time the defendant was slashing at Spight with a knife and had gashed Spight on the back of his neck and on his face, and that blood was streaming down his shirt. He stated that Spight started to slump down and the defendant said, "I will kill you," and stabbed Spight somewhere on the chest or the belly line.

No point is raised with reference to any improper ruling or any matter except the question as to whether or not the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. It is a well understood rule of law that where in a criminal case there is direct conflict of testimony, the trier of the fact is the sole judge of credibility. People v. Thornton, 26 Ill2d 218, 222, 186 NE2d 239. In the instant case the jury, properly instructed, heard the evidence and found the defendant guilty. The court, an experienced trial judge, also heard the evidence and denied defendant's motion for a new trial. It is the law that the State must prove the defendant guilty beyond a reasonable

doubt. From the record before us it is obvious that there was sufficient evidence to support the conviction of the defendant.

DECISION: The judgment of the Circuit Court is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.