THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEON DREAD, Defendant-Appellant.

(No. 60167;

First District (2nd Division)—March 18, 1975.

James J. Doherty, Public Defender, of Chicago (Marilyn D. Israel and Matthew J. Beemsterboer, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Leon Dread, defendant, appeals from the trial court's findings of guilty of robbery, attempt armed robbery and unlawful use of a weapon. Defendant received indeterminate sentences of 1 to 8 years for robbery, 1 to 8 years for attempt armed robbery, and 1 to 3 years for unlawful use of a weapon. All sentences were to run concurrently.

Defendant raises four issues on appeal: (i) did the State fail to meet its burden of proof on the charge of unlawful use of weapons by neglecting to introduce evidence that the barrel of the gun was less than 18 inches; (ii) did the State fail to meet its burden of proof on the sanity issue; (iii) was it improper to convict and sentence defendant for the three separate offenses charged; and (iv) were the sentences excessive.

The evidence elicited at the bench trial revealed the following factual situation. On August 15, 1972, between 9 and 10 P.M., defendant, dressed in a large coat, approached Gordon Goranson and John Porter while they were conversing in an alley near the Carl Sandburg apartments on the near north side of the City of Chicago. Porter was working on his car in the alley. Defendant pulled out a shotgun from under his coat and said he wanted money. Defendant reached into Goranson's pocket for his wallet and asked for Porter's car keys. Porter tried to dissuade defendant

and moved toward him. When Porter made his move, defendant struck him on the head with the shotgun. The Sandburg security jeep appeared, and defendant grabbed Goranson's wallet and fled. The police were called and Porter was taken to the hospital.

The security guards pursued defendant and cornered him in a nearby church courtyard until the police arrived. Upon searching the area, the police found the defendant in a corner of the yard with the shotgun on the ground in front of him. Defendant was arrested and taken into custody.

Goranson and Porter both identified defendant in a lineup later in the evening after the arrest and at trial. Goranson, Porter and the arresting officer, William Disselhorst, identified the shotgun presented at the trial as the one in the defendant's possession on the night in question. This gun was admitted into evidence over defendant's objections.

Defendant testified at trial that he did not remember the events of August 15, 1972, and that he claimed to have severe headaches and blackout spells since the incident. He further stated he served in the Viet Nam war and suffered two injuries: a wounded thigh and injuries from a bullet ricocheting off his head. Defendant testified he had been a mental patient at the veterans hospital in Kentucky, Viet Nam [sic]. On the basis of this testimony, defendant attempted to raise the defense of insanity on August 15, 1972.[1] In response to this alleged defense, the State called as its witness the psychiatrist who had examined defendant after he was taken into custody.

Dr. Richard A. Malek, a psychiatrist for the Psychiatric Institute of the Circuit Court of Cook County, testified concerning two examinations of defendant. After the first examination, which was conducted on January 23, 1973, the doctor was of the opinion that the defendant was fit to stand trial. After the second examination, on April 25, 1973,[2] the doctor again was of the opinion that defendant was fit to stand trial, and that as of the time of the alleged incident, defendant had the substantial capacity to appreciate the criminality of his conduct and the capacity to conform his requirements to the law. At trial the doctor explained he believed the defendant suffered from a mental illness—schizophrenia—but that the schizophrenia was in remission:

> "I could obtain no evidence, there was nothing in the arrest incident report, there was no indication of any interview I had done that he was not in remission at the time."

---

[1] See Ill. Rev. Stat. 1971, ch. 38, par. 6—2.

[2] The trial commenced June 6, 1973.

The doctor further testified that he did not observe anything that would indicate organic or brain damage; that he had the feeling defendant was somewhat manipulative and had a very good memory for many things, and perhaps conveniently could not recall the arrest incident itself. On cross-examination the doctor admitted he would have no way of knowing whether on August 15 the defendant was in a state of acute schizophrenia. Dr. Malek was the only psychiatrist to testify regarding defendant's mental condition.

The trial court found defendant guilty of robbery, attempt armed robbery and unlawful use of weapons. After considering defendant's prior record: 1971, shoplifting—180 days, and 1972, disorderly conduct—1 year probation, the recommendation of the State that defendant be sentenced to not less than 4 nor more than 12 years in the penitentiary, and the request on behalf of the defendant for probation, the trial court imposed a sentence of no less than 1 nor more than 8 years on the robbery and attempt armed robbery charges, and no less than 1 nor more than 3 years on the conviction of unlawful use of weapons. These sentences were to run concurrently. This appeal followed.

## I.

■■ Under Illinois law (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(7)), it is an offense to possess "* * * any shotgun with a barrel less than 18 inches in length." Defendant contends since the State did not introduce evidence of the actual length of the barrel, an essential element of proof was lacking. The State points out that defendant is attempting to raise this objection for the first time on appeal. Our search of the record indicates that at the time the shotgun was offered as an exhibit at trial, defendant objected to its admissibility on the grounds that the chain of evidence had not been proved and that there was no evidence that the shotgun was in a firing condition. These objections were overruled and are not now challenged. We have been unable to find any specific objection of the nature now raised. Thus, the point has not been properly preserved for review. *People v. Adams* (1968), 41 Ill.2d 98, 101, 242 N.E.2d 167; *People v. Garner* (2nd Dist. 1968), 91 Ill.App.2d 7, 12, 234 N.E.2d 39.

However, for the following reasons we prefer to consider the point. On review by this court, we found defendant failed to cause the exhibit, which would prove or disprove the point, to be filed for inspection by this court. In fact defendant's attorney, seeking to persuade this court that the shotgun did not meet the statutory requirement of "less than 18 inches in length," stated to this court at oral argument that there was no duty or need to make this exhibit available on review. We observe

that the State failed to describe the exhibit with specificity as did the defense attorney fail, as just noted, to object on this ground.

■■■ Realizing this case was tried before the court without a jury, it is permissible to assume the experienced trial judge was satisfied that the shotgun complied with the statute before there was a finding of guilty. After oral argument, at the direction of this court, the exhibit was filed with this court. Our personal inspection clearly establishes the fact that the barrel is less than 18 inches in length. On appeal, the attorneys seeking to rely on disputed evidence have a duty to fairly present to this court the disputed evidence or an adequate description thereof. See Supreme Court Rule 608(a), 612 (Ill. Rev. Stat. 1973, ch. 110A, par. 608(a), 612); *People v. Poole* (1923), 310 Ill. 345, 347, 141 N.E. 730; *People v. Stevens* (1929), 335 Ill. 415, 421, 167 N.E. 49; *People v. Spies* (1931), 344 Ill. 586, 588, 176 N.E. 732; *People v. Thomas* (1st Dist. 1967), 80 Ill.App.2d 88, 91 n. 4, 225 N.E.2d 103.

There is another professional problem involved in this point which is symptomatic of a situation frequently arising in this court. In the trial court and on appeal, defendant was represented by the public defender of Cook County, with different assistants handling the trial and the appeal. The public defender in this court is questioning the failure of the action of the public defender in the trial court. We question the propriety of such conduct.

■■■ We recognize and appreciate that the public defender of Cook County has a heavy and awesome responsibility, but we find no basis to permit the public defender or an assistant public defender to believe that professional conduct is any the less applicable to his office than to any other law office. The public defender, as the State's attorney, are both responsible for the professional conduct and acts of his assistants. In our adversary system a lawyer has a duty to zealously represent a client in accord with the code of professional ethics. We urge all counsel to raise on appeal every point, based on the record, which presents any question, even though it may not appear to be substantial or meritorious.

*People v. McCall* (1st Dist. 1973), 14 Ill.App.3d 340, 302 N.E.2d 400, concerned a similar question as to the length of a shotgun barrel under the same statute. There, the defendant was found guilty of unlawful use of weapons. On appeal it was objected that the length of the gun's barrel was never established at trial. We said then:

> "In the case at bar the fact that the sawed-off shotguns were introduced in evidence and viewed by the trial court, together with the testimony of the police officers, was sufficient to support a guilty finding beyond a reasonable doubt." 14 Ill.App.3d 340, 342.

Defendant argues *McCall* does not apply because it was wrongly based

on *People v. McMahon* (1934), 359 Ill. 97, 194 N.E. 233. The gun in *McMahon* was clearly labeled as the prohibited type, while the shotguns in *McCall* and the present case had no clear marking that they were less than 18 inches. However, as this court noted in *McCall,* the barrel of the gun was exhibited before the trial judge who was conscious of the necessary elements of the offense, including the necessity that the barrel be less than 18 inches.

■■ As in *McCall,* the finding of guilt of unlawful use of weapons in the case at bar was not so implausible as to justify a reasonable doubt of guilt. The problem involved here was caused by the State failing to properly describe the exhibit for the record at the time it was offered and admitted into evidence. However, by not so doing, the State did not fail to meet its burden for the exhibit clearly was within the statutory requirements. As noted, we find this point to be frivolous and totally lacking in merit.

## II.

■■ Defendant contends a reasonable doubt was raised regarding defendant's sanity at the time of the crime (Ill. Rev. Stat. 1971, ch. 38, par. 6—2(a)), and that the State failed to prove beyond a reasonable doubt that the defendant was sane at the time the offense was committed.

Section 6—2(a) of the Criminal Code defines insanity as:

"(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

Under section 3—2 of the Code (Ill. Rev. Stat. 1971, ch. 38, par. 3—2), when the State's evidence does not raise the issue of insanity "the defendant * * * must present some evidence thereon." A careful analysis of the defendant's evidence, as summarized on page 2 of this opinion, suggests a serious doubt whether defendant presented enough evidence to raise a reasonable doubt as to his sanity (see *People v. Redmond* (1974), 59 Ill.2d 328, 320 N.E.2d 321); nevertheless, the State submitted evidence on this issue.[3]

■■ The question of the sanity of the defendant at the time of the crime is a question for the trier of fact and should not be disturbed unless palpably against the weight of the evidence. (*People v. Myers* (1966),

---

[3] Although the trial court apparently believed defendant's evidence did meet the "reasonable doubt" test, on our review of the evidence it is our opinion the self-serving testimony fails to meet the test as set forth in *People v. Redmond, supra.*

35 Ill.2d 311, 220 N.E.2d 297; *People v. Banks* (1st Dist. 1974), 17 Ill.App.3d 746, 308 N.E.2d 261.) The only psychiatrist to testify stated he believed the defendant was sane at the time of the offense. He admitted he could not state with certainty whether the defendant was suffering from an acute state of schizophrenia at the time of the crime, but in his opinion the defendant was sane. The State argued further that the defendant's behavior during and after the crime was that of a person who understood what he was doing. The defendant fled and hid. Also, defendant's lack of memory was suggested to be a mere convenience. Our review of the record satisfies us that the evidence of the State established beyond a reasonable doubt, the defendant was sane at the time he committed the criminal acts.

 This point raises a problem we feel appropriate to discuss. In any criminal case, not only must the State prove the defendant guilty as charged beyond a reasonable doubt, but in addition, when the affirmative defense of alleged insanity at the time of the alleged criminal act is raised, a significant second issue is presented. Faced with this dilemma, when there is evidence to rebut the presumption of sanity, the defendant's attorney must argue that on the one hand his client is not guilty —but on the other hand, if so, then the evidence raises a reasonable doubt as to his sanity. Illinois does not statutorily authorize bifurcated or two-stage trials in criminal cases. (*People v. Speck* (1968), 41 Ill.2d 177, 206, 242 N.E.2d 208.) Nor do our statutes prohibit bifurcated proceedings. As our supreme court said in *Speck*: "* * * a defendant is not entitled constitutionally to a separate trial upon each issue in the case." 41 Ill.2d 177, 208.

Our present statute, section 6—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 6—2), became effective January 1, 1962. As stated by Professor Charles H. Bowman in the Committee Comments: "This is a vexed question and one probably more widely discussed than any other issue in the field of criminal liability." Since the adoption of the present statute, we have gained much experience in the practical trial application of this "vexed" question.

Anyone who has had trial experience when the jury must consider this two-headed problem can readily appreciate that our present procedures raise many serious questions for the State and its witnesses, for the defendant, for all counsel, for the jury, for the court, and for the experts who are asked to look backward for generally some period of time and attempt to professionally diagnose, evaluate and determine a person's mental condition as of that earlier date. We ask the trier of fact to determine the question of criminal responsibility of the defendant, first on the contention by the defendant that he did not do the act, and secondly,

if he did, then the question of whether he was criminally responsible. Lest we be misunderstood, we do not question the legality or wisdom of section 6—2 and the basis for its adoption.

As stated by Karl Menninger, M.D. in his book, The Crime of Punishment (1968), at page 125: "The judge and jury do not understand many words used in the courtroom by psychiatrists but hesitate to question us about them lest they seem naive or ignorant (or receive an equally incomprehensible answer)."

Dr. Menninger further comments at page 139:

> "The proposed elimination of the psychiatrist from the courtroom is not just because we do not like to be disputed by our colleagues, badgered by opposing attorneys, suspected of being purchasable and discredited as scientists. I oppose courtroom appearances because I consider guilt, competence, and responsibility to be moral questions, not medical ones. The judge and the jury are the community's representatives in this area. It is for them to make the judgment and apply the sanctions deemed appropriate, not us psychiatrists. Society decides—through them—what crime is and what proof it requires in any particular instance and what penalty applies."

(See also T. S. Szasz, M.D., Psychiatric Justice (1965); Fishman, *The Law of Criminal Responsibility*, 56 Ill. B.J. 914 (1968); and Curnow, *Legal Insanity and the Federal Courts: Does the Ninth Circuit Guide or Confuse*, 33 Fed. B.J. 305 (1974).) In reviewing these commentators in their discussion of the psychiatrist's role in a criminal proceeding, it is obvious that a reexamination of the procedural aspect of the insanity issue is timely.

In fact, Dr. William H. Haines, for many years director of the Behavior Clinic of the Criminal Court of Cook County, took the position that a psychiatrist could not make an accurate assessment of a person's impulses some months prior to an examination. See *People v. Count* (1st Dist. 1969), 106 Ill.App.2d 258, 262, 246 N.E.2d 91; and *People v. Taylor* (1st Dist. 1971), 1 Ill.App.3d 1053, 1059, 275 N.E.2d 717.

The recently adopted Unified Code of Corrections (effective January 1, 1973) provides a procedure for presentence investigation including a commitment for study and report. (See Ill. Rev. Stat. 1974, ch. 38, pars. 1005—3—1 through 3—3.) Section 5—3—2(b) provides for "a physical and mental examination of the defendant when so ordered by the court." Perhaps some thought could be given to the possibility of using such a procedure for a post-conviction examination, evaluation and resolution of this question outside the inherent conflicts of resolving the innocence or guilt issue in the criminal trial.

Of course, we are not in any way suggesting any procedural problem in the instant case or the conclusion of the trial court as to sanity of the defendant. Because the record is clear-cut, we believe our comments can be noted without raising any doubts of the finding of the defendant guilty as charged beyond a reasonable doubt.

## III.

■■■■ Next defendant questions if it was proper to convict and sentence defendant for the three offenses: robbery, attempt armed robbery, and unlawful use of weapons. A defendant may be charged with all offenses arising from his conduct. (Ill. Rev. Stat. 1971, ch. 38, par. 3—3.) However, he may only be convicted and sentenced where the offenses are separate and distinct, requiring separate elements of proof. (*People v. Moore* (1972), 51 Ill.2d 79, 281 N.E.2d 294; *People v. Barry* (1st Dist. 1972), 6 Ill.App.3d 836, 286 N.E.2d 753.) If those acts are part of a single act, and are not separate and distinct, only one conviction and one sentence may be entered. *People v. Stewart* (1970), 45 Ill.2d 310, 259 N.E.2d 24.

■■ Defendant contends the charges in this case involved a single conduct, one intent; and therefore, only one conviction and sentence may stand. We disagree with this contention.

While defendant's acts were closely related in time and place, they were separate and distinct requiring different elements of proof. Defendant in the case at bar, carried the unlawful weapon when approaching his victims, during the offense, and afterwards. His was a continuing violation, separate and distinct from the other crimes. There is no necessary connection between the use of the unlawful weapon and the other charges.

■■■ The robbery and attempt armed robbery convictions required separate elements of proof. While occurring at the same time and place, these crimes were separate and distinct acts violating the rights of two individuals. (See *People v. Ellington* (5th Dist. 1972), 7 Ill.App.3d 72, 286 N.E.2d 367.) The robbery required an actual taking while the attempt required only a step toward the commission of the crime. The defendant took Goranson's wallet, but only attempted to take Porter's car keys. While these takings occurred in the same place at the same time, they involved two separate persons and different properties.

■■ As stated by our supreme court in *Moore*, where the acts, although committed in the course of the same transaction, involve conduct clearly divisible from the conduct which constitutes the other offenses, the conviction and sentence on each charge is proper.

## IV.

■■■ The 1- to 8-year sentences for robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—1) and attempt armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 8—4(c)) are within the authorized statutory sentences, and the 1- to 3-year indeterminate sentence for unlawful use of weapons (Ill. Rev. Stat. 1971, ch. 38, par. 24—1) is within the indeterminate sentence for a class four felony. (Ill. Rev. Stat. 1974, ch. 38, par. 1005—8—1.) Based on the matters presented to the trial court in the hearing on aggravation and mitigation—the facts of this case and the prior record of the defendant—the sentences imposed in this case are within the statutory norms and are not excessive.

The judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

STAMOS and LEIGHTON, JJ., concur.