THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DEBRA GUPPY, Defendant-Appellant.

(No. 74-307; )

Third District—July 31, 1975.

*Modified upon denial of rehearing September 2, 1975.*

James Geis and Richard Steck, both of State Appellate Defender's Office, of Ottawa, for appellant.

C. Brett Bode, State's Attorney, of Pekin (Jay H. Janssen, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant Debra Guppy was indicted on 15 counts of perjury and, after a bench trial, she was convicted on 13 counts. The perjury charges arose from false testimony given before the grand jury investigating an armed robbery allegedly committed by her ex-husband during their marriage. Defendant was given one sentence of 3 years' probation on all 13 counts. On appeal, defendant contends that she committed only

one offense, that convictions on 12 counts should be reversed, and that this cause should be remanded for resentencing on the 13th count. In addition, she argues that the proof offered by the prosecution did not sustain the allegations of Counts 13, 14, and 15.

The facts are not disputed. Defendant was subpoened before the grand jury to testify concerning a possible charge of armed robbery against her ex-husband in the case of *People v. Burgess*. She was granted immunity from prosecution, her requests for advice of counsel were refused, and she was directed to answer all questions. During her interrogation she was asked the following questions, which are numbered to correspond to the counts in the indictment:

1. "Q. Did you call the Morton Police Department to divert them to some other residence at that time? A. No."

2. "Q. Are you saying that you did not see any of the proceeds of an armed robbery or any unusual amount of money in your home that evening, or in any area at that time? A. Yes."

4. "Q. Well, did you ever see any of the proceeds of the armed robbery? A. No."

5. "Q. Did you see any unusual amount of money in your home that evening? A. No.

6. "Q. At any time in the month of February, did you see any unusual amount of money in your home? A. No."

7. "Q. So, in other words, you were never asked any questions or gave any answers, is that what you are saying? A. Yes."

8. "Q. At any time during the month of February do you remember any large amount of money or currency being in your home, say about Two or Three Thousand ($2000 or $3000) Dollars? A. No."

9. "Q. Do you recall ever seeing him saw off a barrel of a shotgun? A. No."

10. "Q. Did you buy about Five Hundred ($500.00) Dollars worth of new tools? A. I don't know."

11. "Q. Are you saying now that you don't know anything about any robbery that occurred about the 9th day of February, 1973, at Karsmeyer's Market in Morton, Illinois, is that what you are saying? A. Yes."

Later the same day after returning an indictment charging her ex-husband with armed robbery, the grand jury recalled defendant, and she was asked additional questions as follows:

13. "Q. In other words, you are saying, that you don't recall your husband, in any way, being involved in any armed robbery on or about February 9, 1973, is that correct? A. Yes."

14. "Q. You don't recall his coming home with say, about between

Two and Three Thousand ($2000 or $3000) Dollars some night on or about February 9, 1973? A. No."

15. "Q. You don't recall your husband buying a tool chest worth anywhere between Five and Seven ($500 or $700) Hundred Dollars? A. No."

██ Before discussing defendant's arguments, it is instructive to examine two general provisions of the Code of Criminal Procedure. Section 111—4 (Ill. Rev. Stat., ch. 38, § 111—4) provides:

"(a) Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are based on the same act or on 2 or more acts which are part of the same comprehensive transaction."

Under this section, if defendant's conduct amounted to the commission of more than one offense, it would be proper to join them as separate counts in one indictment.

Section 3—3 of the Criminal Code governs multiple prosecutions for the same conduct:

"(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

(b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution * * * if they are based on the same act." Ill. Rev. Stat., ch. 38, § 3—3.

The question whether a single act, or a series of acts occurring at the same time and place, result in one or several offenses has frequently been before the courts. The question has arisen in cases where the primary issue is the applicability of the prohibition against separate prosecutions in section 3—3 of the Criminal Code (Ill. Rev. Stat., ch. 38, § 3—3). (See *People v. Golson,* 32 Ill.2d 398, 207 N.E.2d 68 (1965), *cert. denied,* 384 U.S. 1023, 16 L.Ed.2d 1026, 86 S.Ct. 1951 (1966); *People v. Ciucci,* 8 Ill.2d 619, 137 N.E.2d 40 (1956), *aff'd,* 356 U.S. 571, 2 L.Ed.2d 983, 78 S.Ct. 839 (1958).) The question has also arisen in cases where the issue is whether more than one sentence, either consecutive or concurrent, may be imposed where separate offenses resulted from one course of conduct under section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, § 1005—8—4). See *People v. Lerch,* 52 Ill.2d 78, 284 N.E.2d 293 (1972); *People v. Whittington,* 46 Ill.2d 405, 265 N.E.2d 679 (1970); *People v. Stewart,* 45 Ill.2d 310, 259 N.E.2d 24 (1970); *People v. John-*

*son,* 44 Ill.2d 463, 256 N.E.2d 343 (1970), *cert. denied,* 400 U.S. 958, 27 L.Ed.2d 266, 91 S.Ct. 356 (1970).

■■ The case before us presents the question of separate offenses in the context of a single prosecution on all charges, and a single sentence on all convictions. Our supreme court has refused to permit more than one conviction to stand where two offenses were founded on a single act, even though only one sentence was imposed for the greater offense. (*People v. Lilly,* 56 Ill.2d 493, 309 N.E.2d 1 (1974).) However, where a series of separate, closely related acts give rise to more than one distinct offense requiring different elements of proof, multiple convictions have been sustained. *People v. Moore,* 51 Ill.2d 79, 281 N.E.2d 294, *cert. denied,* 409 U.S. 979, 34 L.Ed.2d 242, 93 S.Ct. 331 (1972); *People v. Harper,* 50 Ill.2d 296, 278 N.E.2d 771 (1972); *People v. Johnson; People v. Bell,* 30 Ill.App.3d 449, —— N.E.2d —— (3rd Dist. 1975); *People v. Dread,* 27 Ill.App.3d 106, 327 N.E.2d 175 (1st Dist. 1975).

In *People v. Cox,* 53 Ill.2d 101, 291 N.E.2d 1 (1972), the question was whether two sexual acts, both proscribed under section 11—4 of the Criminal Code (Ill. Rev. Stat., ch. 38, § 11—4) and both occurring almost simultaneously at the same place, constituted a single offense of indecent liberties with a child, properly punishable by only one sentence. Our supreme court, after concluding that the indecent liberties statute was ambiguous, reversed one conviction and said "in the absence of a statutory provision to the contrary the conduct here constituted a single offense * * *." (53 Ill.2d 101, 106.) We believe that under Cox, we are required to analyze the perjury statute to determine whether the offense of perjury is defined as a single act or whether it encompasses a series of acts constituting one course of conduct. The Illinois Criminal Code defines perjury as follows:

"A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true." Ill. Rev. Stat., ch. 38, § 32—2(a).

No Illinois cases have been cited, and we find none, that have decided whether this provision permits multiple convictions founded on a series of false statements made in one proceeding (here, a single day of a grand jury session). It is significant that the statute speaks of "a false statement, material to the issue or point in question." To us, this plainly means that each false statement concerning a different issue or point under inquiry is a separate perjurious act and hence a separate offense.

In a nearly identical case, *Seymour v. United States,* 77 F.2d 577 (8th

Cir. 1935), defendant was convicted on five counts of perjury; the trial court imposed one general sentence on all counts; and, on review, all the convictions were affirmed. Defendant contended that only one crime was committed. The court noted that the false statements were in answer to questions concerning different matters of inquiry, and held that the fact that all were made at the same hearing and referred to the same general subject of inquiry did not prevent each from being a separate and distinct crime punishable as such. The court stated:

> "The commission of perjury as to one matter does not absolve the witness or afford him immunity as to all other matters covered by his testimony at the same hearing. The obligation to testify truly and the penalty for false swearing is present as to every material answer given by him." (77 F.2d 577, 581.)

This rule was also followed in *United States v. Andrews,* 370 F.Supp. 365 (D.C. Conn. 1974); *United States v. Cason,* 39 F.Supp. 731 (W.D. La. 1941).

The Federal perjury statute provides that one is guilty of perjury where, under oath he states "any material matter which he does not believe to be true." (18 U.S.C.A. § 1621 (1966).) The outer limit for bringing perjury multiple charges under this section was recognized in *Gebhard v. United States,* 422 F.2d 281 (9th Cir. 1970), where the court said:

> "Gebhard was charged with thirty-two counts of perjury. If he in fact told separate lies, each of which could have hindered the grand jury in its investigation, then he could properly be separately charged for each lie. On the other hand, we do not think it proper that the government bludgeon a witness who is lying by repeating and rephrasing the same question, thus creating more possible perjury counts." (422 F.2d 281, 289.)

The trial court had imposed separate sentences for each count. The reviewing court grouped together the counts where the same question had been repeated and held that only one count in each group could stand, observing that to hold otherwise would permit a prosecutor to run up a possible perjury sentence indefinitely merely by repeating the same question. "Single punishment for a single lie should suffice." 422 F.2d 281, 290.

In a recent New York perjury case, *In re Di Lorenzo,* 36 N.Y.2d 306, 327 N.E.2d 805 (1975), the court considered the question of when a criminal transaction is separable into distinct events justifying separate prosecution and convictions. Although the eight counts of perjury all related in a general sense to one event (a meeting between the defen-

dant and another person on February 6, 1967), the court affirmed the convictions and held that each alleged perjury involved a separate act of false testimony. The court also noted:

> "In reaching the conclusion we do in this case we do not wish to be understood, however, as approving efforts on the part of a prosecutor, by a series of questions, each carefully phrased to include a linguistic difference, to fracture what is in essence a single, integral inquiry into multiple aspects, susceptible to description as different by a lexicographer but not reasonably so as to be characterized as a mater of substance." 327 N.E.2d 805, 808.

The question of separate offenses arising in perjury cases must be distinguished from a similar problem occurring in contempt cases, where defendant establishes an area of refusal when asked the first question. It has been held that the prosecution may not multiply contempts by repeated questions within the area of refusal even if the questions cover more than a single subject of inquiry. (*Yates v. United States,* 355 U.S. 66, 2 L.Ed.2d 95, 78 S.Ct. 128 (1957). See *In re Di Lorenzo;* Annot., 94 A.L.R.2d 1246 (1964).) However, where a witness has refused to answer questions on separate appearances before a grand jury on different days, each refusal has been held to constitute a separate offense. *In re Vario* (1969), 32 App.Div.2d 1038, 303 N.Y.S.2d 926.

In our opinion the interpretation of the question of separate charges in perjury cases adopted by the Federal and New York courts is sound, and the same principles should be applied under the Illinois perjury statute which, although different in form, is similar in substance. This view is also consistent with the rule that separate crimes may be charged where each offense is based on conduct clearly divisible from the conduct constituting the other offenses. *People v. Moore; People v. Johnson; People v. Bell; People v. Dread.*

In the case before us, insofar as each count is based on a separate act, *i.e.,* a false answer to a question concerning a different material fact or point, then each count is a distinct offense of perjury as defined by the statute. The elements of proof required to establish guilt are different for each charge since the falsity of each answer and the materiality of each statement must be established by the evidence. *People v. Berry,* 309 Ill. 511, 141 N.E. 132 (1923); *People v. Harris,* 102 Ill.App.2d 335, 242 N.E.2d 782 (5th Dist. 1968).

To adopt defendant's position would permit witnesses, who lie once, to escape punishment for an unlimited number of additional false statements. We believe such a result is not contemplated by the statute and should not be countenanced by the courts.

■■ We hold therefore that, in the case before us, separate counts of

perjury were proper to the extent that each count alleged a false statement in answer to a question concerning a different fact or point in question. Applying this rule to the 13 counts, we find that Counts 2, 5, and 14 involved nearly identical questions, concerning defendant's knowledge of unusual amounts of money in her home on February 9. Defendant's convictions on counts 5 and 14 must therefore be reversed. Similarly, counts 6 and 8 involved repetitive questions about large amounts of money in defendant's home during the month of February. Accordingly, conviction on count 8 must also be reversed.

Defendant also urges that her convictions on counts 13, 14, and 15 should be reversed because the proof failed to sustain the allegations of the indictment. Each of the 15 counts charged that defendant gave false statements to the grand jury during its investigation into a cause which became known as *People v. Burgess.* However, the evidence shows that the statements which gave rise to counts 13, 14, and 15 were elicited when defendant was recalled by the grand jury after Burgess had been indicted. She was informed that the grand jury had completed its investigation of Burgess and that they were investigating the possibility of indicting her for perjury.

In *People v. Miller*, 264 Ill. 148, 106 N.E. 191 (1914), the indictment alleged that the grand jury was investigating whether a card game had been played for money in Sullivan, Illinois, within 18 months, and that defendant testified before the grand jury that he had not been present at a card game played for money in Sullivan within 18 months, when in fact he had. The court held it proper to bring a defendant before a grand jury to testify about a matter in which he was himself concerned, and to charge him with perjury if he answers falsely. Thus we conclude that it was not erroneous to recall defendant Guppy in the case at bar, and to question her further as a part of the grand jury's investigation into a possible perjury charge. The subsequent questioning afforded defendant an opportunity to admit the falsity of her previous statements. That she persisted in her plan of deception and made additional false statements quite properly resulted in additional charges.

As a general rule, an indictment for perjury committed by giving false testimony before a grand jury must state the matter that was being investigated. (60 Am. Jur. 2d *Perjury* § 37 (1972).) However, as was noted in *Gebhard v. United States,* the purpose of an allegation as to the matter under investigation is to apprise the defendant of the nature of the charge so that a defense can be prepared. There the court held that the indictment fairly warned the defendant of the charges against him, and that he was not prejudiced by the failure to include the nature of the grand jury investigation in the indictment.

In the case at bar, the false statements alleged in counts 13, 14, and 15 concerned matters material to *People v. Burgess*. The evidence adduced at trial also showed that, at the time these three statements were made, the grand jury was considering an indictment against defendant. We do not believe this amounted to a fatal variance between the indictment and the proof. The proof was sufficient to sustain the convictions on these three counts. However, count 14 was defective on other grounds as noted above.

Defendant was sentenced to 3 years' probation on all counts. She urges that, upon reversal of her conviction on some counts, this cause should be remanded for resentencing because the trial court may have been influenced by the convictions on the three invalid counts when sentence was imposed. (*People v. McGaha*, 10 Ill.App.3d 1051, 295 N.E.2d 476 (1st Dist. 1973).) We believe that where one sentence was imposed on all counts, and some of those counts were invalid, the cause should be remanded for a reconsideration of sentence by the trial court, even though 3 years' probation is not an inappropriate sentence on the 10 counts which were valid convictions. We therefore vacate the sentence and remand with directions to hold a new hearing for resentencing the defendant.

Affirmed in part; reversed in part; remanded with directions.

STOUDER, P. J., and BARRY, J., concur.