COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-07-324-CR

                                        NO. 2-07-325-CR

 

STEPHEN BERNARD JONES                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                       OPINION

 

                                              ------------








A jury
convicted Appellant Stephen Bernard Jones of three counts of making a false
statement to obtain property or credit of more than $200,000 in each of two
cases.[1]  Upon his plea of true to habitual
allegations, the jury assessed his punishment at forty-five years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice on each count.  The trial court
sentenced him accordingly, ordering the sentences to be served concurrently. 

In three
points, Appellant argues that the trial court abused its discretion by allowing
him to represent himself, that his multiple convictions and sentences under
each indictment violate double jeopardy protections, and that the evidence is
insufficient to show the amount of loss. 
We affirm the trial court=s
judgments as modified.

Background
Facts

Appellant
was an employee of Legacy Financial Group, a mortgage company that helps
prospective home owners navigate the mortgage loan process.  Appellant submitted uniform residential loan
applications for two separate residential properties, seeking loans in the
amounts of $680,000 and $544,000. 
Appellant made false statements on the applications, stating that he
owned two fictitious bank accounts.  He
also submitted another person=s credit
report as his own.

                                         Double
Jeopardy

In his
second point, Appellant argues that he was denied double jeopardy protection
because he received multiple convictions and punishments under each indictment,
instead of just one conviction and sentence per indictment.  Section 32.32 of the penal code provides in
pertinent part,








(a) For purposes of this
section, Acredit@ includes:

 

(1) a loan of money;

 

. . . 

 

(7) a mortgage loan.

 

(b) A person commits an
offense if he intentionally or knowingly makes a materially false or misleading
written statement to obtain property or credit, including a mortgage loan.

 

(c) An offense under this
section is:

 

. . .  

 

(7) a felony of the first
degree if the value of the property or the amount of credit is $200,000 or
more.[2]

 








  Each indictment contains three counts, but
all of the counts within each indictment deal only with a single loan
application. The State argues that because each material false or misleading
written statement made by Appellant in the loan applications was an allowable
unit of prosecution, no double jeopardy violation occurred regarding Appellant=s six
convictions and sentences.  Appellant
argues that each application is a single unit of prosecution.  We hold that the allowable unit of
prosecution is the property or credit sought or obtained via the false or
misleading statement or statements.  In
this case, because each application in this case sought different credit, there
are two, not six, allowable units of prosecution.   

The
State relies on language in Cheney v. State, a case addressing not the
issue before us but whether statutes proscribing felony theft and making a
false statement to obtain property or credit were in pari materia.[3]  The Cheney court provided that A[s]ection
32.32, supra, by its own language, proscribes the making of written false or
misleading statements to obtain property or credit.  It is the act of making such statements that
is the gravamen of the offense,@ and
also stated that A[t]he offense is complete once
the written, deceptive statement relevant to obtaining property or credit is
made, even if the perpetrator is not successful in obtaining the property or
credit as a result of his written deception.@[4] 








We note
that Cheney was decided twenty years ago, when committing an offense
under section 32.32 was a misdemeanor regardless of the value involved.[5]  In 2001, however, the Texas Legislature
amended section 32.32 to make the degree of the offense (and therefore the
potential penalty) dependent on the value of the loan or credit sought.[6]  Although the Cheney court pointed out
that proof of the value of the property is a critical factor in the offense of
theft but not required to prove an offense under section 32.32 in effect at
that time,[7]
under the current statute proscribing the making of a false statement to
obtain property or credit, the value of the property is critical in
determining both the degree of the offense and the penalty range.[8]


Additionally,
the Cheney court was not faced with the issue before us.  As this court has previously explained,

When discerning the
meaning of a statute, we begin with its plain language.  We focus our attention on the literal text of
the statute in question. If that language is clear and unambiguous, the plain
meaning of those words is applied.  But
if the plain language leads to an absurd result that the legislature could not
have possibly intended, or if the language is ambiguous, we may consider extra‑textual
factors to determine the statute=s meaning. 
For example, if a statute may be interpreted reasonably in two different
ways, a court may consider the consequences of differing interpretations in
deciding which interpretation to adopt. 
If one interpretation yields absurd results while the other
interpretation yields no such absurdities, the latter interpretation is
preferred.[9]


 








The
State analogizes to the perjury statute in discussing the allowable unit of
prosecution, pointing out that each false statement during a grand jury
proceeding was held to constitute a separate offense in People v. Guppy.[10]  We note that statement is defined for
purposes of the penal code perjury chapter 
as Aany representation of fact@[11] and
that monetary value has no connection to the offense grade or penalty range
involved in perjury.[12]  On the other hand, statement is not
defined in the fraud chapter.[13]  








But
section 32.03 in the fraud chapter provides that A[w]hen
amounts are obtained in violation of this chapter [the fraud chapter, including
section 32.32] pursuant to one scheme or continuing course of conduct, whether
from the same or several sources, the conduct may be considered as one offense
and the amounts aggregated in determining the grade of offense.@[14]  That is, under section 32.03, if a defendant successfully
obtains a primary and secondary loan 
under section 32.32 after submitting a fraudulent document or ten
fraudulent documents containing dozens of Amaterially
false or misleading written statement[s],@ then
the conduct may be considered as one offense and the total amount received used
to determine the grade of offense and therefore the penalty range.[15]  Under the State=s
interpretation of the statute at issue, though, a defendant who lies three
times on a document to obtain a single loan but fails to get the money could be
convicted of three offenses and receive three separate sentences, even though
all three lies were focused on getting the same, single benefit.  Such a result would be absurd.[16]  We therefore decline to apply perjury law to
this case.








We
believe that an offense under current section 32.32 is more analogous to a
theft offense.  In theft, the allowable
unit of prosecution is the object or objects stolen.[17]  The value of the property may be determined
by aggregating the amounts of various items stolen pursuant to one scheme or
continuing course of conduct,[18]
just like the value of the property sought or obtained in the fraud chapter.[19]       

Consequently,
we hold that the gravamen, or allowable unit of prosecution, for the offense of
making a false statement to obtain property or credit is the property or credit
sought or obtained pursuant to the false or misleading statement or
statements.  We further hold that, here,
each false statement in each case is an alternative manner and means of trying
to obtain the single mortgage loan involved in each case.   Therefore each indictment will support only
a single conviction.  Because the offenses
and sentences are identical in severity, we modify each judgment to vacate the
convictions and sentences for the second and third counts.[20]  We address Appellant=s
remaining points only as to the live counts.

Sufficiency
of the Evidence








In his
third point, Appellant argues that the evidence is insufficient to show the
amount of loss alleged in each indictment. 
Although he does not state whether he is arguing that the evidence is
legally insufficient or factually insufficient, he cites cases dealing with
both legal and factual sufficiency.  In
the interest of justice, therefore, we address his third point under both
standards.  








Section
32.32 is an unusual statute because it does not require any harm to the
complainant.   The statute does not
require that a defendant obtain the property or credit sought, only that a
defendant attempt to obtain such property or credit through the use of
materially false or misleading statements.[21]
The amount of property, loan, or credit sought, rather than the amount of loss
suffered by the complainant, determines the severity of the punishment.[22]  The State, therefore, was required to prove
in each case only the amount of the loan sought by Appellant when he made the
false statements, not the amount Appellant received.[23]  The State proved that Appellant sought
property or credit of more than $200,000 in each case.  Viewing all the evidence in the light most
favorable to the prosecution,[24]
we hold that the evidence is legally sufficient to support Appellant=s
convictions under the first count of each indictment.  Viewing all the evidence in a neutral light,[25]
we also hold that the evidence is factually sufficient to support his convictions
under the first count of each indictment. 
We overrule Appellant=s third
point.

                                       Self-Representation

In his
first point, Appellant argues that the trial court reversibly erred and abused
its discretion in allowing Appellant to represent himself in the joint jury
trial of the two causes without a written waiver of counsel in those causes in
compliance with article 1.051 of the Texas Code of Criminal Procedure.          The
record shows that on March 2, 2007 at a pretrial hearing, the trial court
called the original cause numbers and the re-indicted cause numbers, explaining
that 1054498R was the re-indictment of 1005292D and that 1054601R was the
re-indictment of 1005291D.  All motions filed
in the original cause numbers were specifically carried over to the re-indicted
causes.








At the
March 2, 2007 hearing, Appellant insisted on dismissing his court-appointed
attorney, Robert Ford, and representing himself.  Appellant signed a written waiver of counsel
that same date, after the re-indictments, and both re-indictment numbers are
listed at the top of the waiver. 
Although the waiver does not specifically track the language of article
1.051(g) of the Texas Code of Criminal Procedure,[26]
it does make clear that Appellant did not want to be represented by
counsel.  The trial court asked Appellant
his reasons for not wanting a lawyer and whether he was able to represent
himself and went to great lengths to admonish Appellant orally on the record.  Appellant persisted in demanding to represent
himself. 

The
trial court allowed Appellant to proceed pro se, granting his waiver of counsel
in each case.  The trial court
nevertheless appointed  standby counsel
for Appellant, and in the penalty phase of the trial, Appellant elected to
proceed with counsel. 








As the
State points out, a defendant is constitutionally and statutorily entitled to
represent himself at trial.[27]  The trial court also complied with the
requirement that it advise the defendant of the dangers and disadvantages of
self-representation so that the defendant Aknows
what he is doing and his choice will be made with eyes open.@[28]  The State correctly argues that a defendant=s
knowing and intelligent choice to represent himself must be honored.[29]  The State also correctly argues that article
1.051(g) is not mandatory and that no writing is required to waive the
constitutional right to counsel.[30]  No particular form is required to effectively
waive counsel, but the record must reflect that a defendant has intentionally,
voluntarily, and with full knowledge given up his right to be represented by
counsel.[31]

In this
case the oral admonishments and statements by Appellant make it clear that the
trial court complied with the requirements of Faretta and that Appellant=s waiver
was voluntarily, intelligently, and with full understanding entered on the
record.  Consequently, we overrule
Appellant=s first point.

 

 

 








Conclusion

Having
overruled Appellant=s first and third points, but
having sustained his second point and vacated the convictions and sentences
under the second and third counts of each judgment, we affirm the trial court=s
judgments as modified.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL: 
LIVINGSTON and DAUPHINOT, JJ.; DIXON W. HOLMAN, J. (Senior Justice,
Retired, Sitting by Assignment).

 

PUBLISH

 

DELIVERED: 
February 5, 2009











[1]See Tex. Penal Code Ann. ' 32.32 (Vernon Supp.
2008).





[2]Id.





[3]Cheney v. State, 755 S.W.2d 123, 130
(Tex. Crim. App. 1988).





[4]Id. at 129.





[5]Act approved June 14,
1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 937 (amended 2001)
(current version at Tex. Pen. Code Ann. ' 32.32).





[6]Act of May 24, 2001, 77th
Leg., R.S., ch. 1245, 2001 Tex. Gen. Laws 2934, 2935 (amended 2007) (current
version at Tex. Pen. Code Ann. ' 32.32).





[7]Cheney, 755 S.W.2d at 130.





[8]See Tex. Penal Code Ann. ' 32.32(c).





[9]Adams v. State, 270 S.W.3d 657, 660
(Tex. App.CFort Worth, pet. filed)
(citations omitted).





[10]333 N.E.2d 576, 578B79 (Ill. App.
1975).





[11]Tex. Penal Code Ann. ' 37.01(3) (Vernon Supp.
2008).





[12]See id. '' 37.02B.03 (Vernon 2003).





[13]See id. '' 32.01B.52 (Vernon 2003 &
Supp. 2008).





[14]Id. ' 32.03.





[15]See id. '' 32.03, 32.32(b).





[16]See Adams, 270 S.W.3d at 660.





[17]See Stewart v. State, 44 S.W.3d 582, 588
(Tex. Crim. App. 2001) (A[T]he gravamen of theft
is in depriving the true owner of the use, benefit, enjoyment or value of
his property, without his consent.@) (quoting McClain v. State, 687 S.W.2d
350, 353 (Tex. Crim. App. 1985)).





[18]Tex. Penal Code Ann. ' 31.09 (Vernon
2003).





[19]Id. ' 32.03.





[20]See Ex parte Cavazos, 203 S.W.3d 333, 338
& n.8 (Tex. Crim. App. 2006); see also Ex parte Cravens, 805 S.W.2d
790, 791 (Tex. Crim. App. 1991).





[21]See Tex. Penal Code Ann. ' 32.32(b).





[22]Id. ' 32.32(c); Cheney,
755 S.W.2d at 129.





[23]See Tex. Penal Code Ann. ' 32.32(b), (c); Cheney,
755 S.W.2d at 129.





[24]See Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007) (both providing standard of review for legal sufficiency).





[25]See Neal v. State, 256 S.W.3d 264, 275
(Tex. Crim. App. 2008); Lancon v. State, 253 S.W.3d 699, 704 (Tex. Crim.
App. 2008); Watson v. State, 204 S.W.3d 404, 414B15, 417 (Tex. Crim. App.
2006); Johnson v. State, 23 S.W.3d 1, 8, 9, 12 (Tex. Crim. App. 2000); Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003) (all providing standard of review for
factual sufficiency).





[26]See Tex. Code Crim. Proc.
Ann. art. 1.051(g) (Vernon Supp. 2008). 
The changes between the version of the statute applicable to Appellant
and the current statute are immaterial to this appeal; we therefore reference
the current statute.





[27]Faretta v. California, 422 U.S. 806, 819B20, 95 S. Ct. 2525, 2533
(1975); Tex. Code Crim. Proc. Ann. art. 1.051(f) (Vernon Supp. 2008).





[28]Blankenship v. State, 673 S.W.2d 578, 583
(Tex. Crim. App. 1984) (quoting Faretta, 422 U.S. at 835, 95 S. Ct. at
2541).





[29]See Faretta, 422 U.S. at 834, 95 S.
Ct. at 2541; Blankenship, 673 S.W.2d at 583.





[30]Tex. Code Crim. Proc.
Ann. art. 1.051(g); Burgess v. State, 816 S.W.2d 424, 430B31 (Tex. Crim. App.
1991).





[31]See Faretta, 422 U.S. at 835B36, 95 S. Ct. at 2541; Burgess,
816 S.W.2d at 428B29.