# Illinois Official Reports

## Appellate Court

---

### *People v. West*, 2019 IL App (1st) 162400

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOEL WEST, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-16-2400 |
| Filed<br>Modified upon<br>denial of rehearing | December 31, 2019<br><br>March 31, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-23038; the Hon. Dennis J. Porter, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Joshua M. Bernstein, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People. |

Panel    JUSTICE WALKER delivered the judgment of the court, with opinion.
Justice Hyman concurred in the judgment and opinion.
Presiding Justice Griffin concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1    The trial court found defendant, Joel West, guilty of aggravated kidnapping, armed robbery, aggravated battery, and armed violence. West contends on appeal that the prosecution did not prove the asportation element of kidnapping and the court improperly relied on its own investigation to reach the finding of guilt on the charge of armed violence. We hold that pushing the victims a few feet in the course of an attempted armed robbery did not meet the asportation element for the kidnapping charges. The evidence also did not prove the charge that West committed armed violence with a knife with a blade at least three inches in length. We reverse the convictions for aggravated kidnapping and armed violence. Because we cannot determine the effect of the improper convictions on sentencing, we remand for resentencing for aggravated battery and armed robbery.

¶ 2                    I. BACKGROUND

¶ 3    On November 9, 2013, Gloria Cruz brought her son X.M. to her workplace, a currency exchange in Chicago. After they entered the currency exchange, a man came through the ceiling, wearing a black hoodie, black pants, black shoes, black gloves, and a black ski mask over a Mardi Gras mask. The man grabbed Cruz and pulled her to the rear, where the currency exchange kept its cash. The man held a knife to Cruz's chin. When Cruz refused to open the door to the back, the man grabbed her keys, opened the door himself, and pushed X.M. into the back. The man struggled with Cruz, but when he finally pushed her through the door to the rear, she quickly closed a gate that barred the man from getting through to the area with the cash. The man opened the currency exchange exit door, threw the keys on the floor, and left the currency exchange.

¶ 4    An alarm that alerts police when the currency exchange does not open on time brought police to the scene a few minutes later. About 25 minutes after the initial alarm, Officer Ryan Sheahan of the Chicago Police Department found West in back of a building on the same block. Sheahan asked West to come to him, but instead, West ran down an alley where police arrested him. Prosecutors charged West with the aggravated kidnappings of Cruz and X.M., armed robbery, aggravated battery, and armed violence "in that [West], WHILE ARMED WITH *** A KNIFE WITH A BLADE OF AT LEAST 3 INCHES IN LENGTH, COMMITTED A *** BURGLARY *** IN THAT HE *** ENTERED A *** CURRENCY EXCHANGE *** WITH THE INTENT TO COMMIT THEREIN A THEFT."

¶ 5    At the bench trial Sheahan testified that as he looked around the area near the currency exchange, he saw West in a stairwell. Sheahan went to the stairwell and asked to see West's hands, and he saw in the stairwell a black hoodie, black pants, black gloves, masks, a knife, another tool, and identification papers for West.

¶ 6 At trial, Cruz identified the hoodie and the masks Sheahan found as the same hoodie and masks the robber wore. She identified the knife Sheahan found as the knife the robber used, and she described the knife as about four inches in length. She did not testify as to the length of the knife's blade. She identified a photograph of her face as an accurate depiction of the injury the robber inflicted when he pressed the knife to her face, leaving a small cut to her chin.

¶ 7 West testified that he was waiting in back of the building to make a drug deal when he heard police coming. He tried to hide the drugs, dropping his identification papers from his pocket in the process. When he ran from Sheahan, he tossed the drugs into a nearby yard before police arrested him. He first saw Sheahan when he was in the middle of the back yard; he had not gone near the stairwell at all.

¶ 8 In closing argument, defense counsel pointed out that the prosecutor presented no evidence of the length of the knife's blade. The trial judge stated, "The blade of this knife is exactly three inches long." The court found Sheahan credible and West not credible, found West guilty on all charges, and denied West's motion for a new trial. The court sentenced West to 10 years in prison for the aggravated kidnapping of Cruz, 10 years for the aggravated kidnapping of X.M., 11 years for armed violence, 11 years for armed robbery, and 5 years for aggravated battery, with the sentences to run concurrently. The court also imposed a wide variety of fees, fines, and costs as part of the sentence. West now appeals.

¶ 9 II. ANALYSIS

¶ 10 On appeal, West does not contest the convictions for armed robbery and aggravated battery. He argues that the prosecution did not prove kidnapping of either Cruz or X.M. and the court improperly relied on its own investigation into the length of the blade. He also argues that this court should remand for resentencing on the remaining counts or at least correct the mistakes in the assessment of fees, fines, and costs.

¶ 11 A. Kidnapping

¶ 12 West contests the sufficiency of the evidence of kidnapping. "When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the required elements of the crime beyond a reasonable doubt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 13 The trial court found that West kidnapped Cruz and X.M. when he pushed them through the door to the rear part of the currency exchange, where the currency exchange kept its cash. Section 10-1 of the Criminal Code of 2012 provides, "A person commits the offense of kidnapping when he or she knowingly[ ] *** by force or threat of imminent force carries another from one place to another with intent secretly to confine that other person against his or her will[.]" 720 ILCS 5/10-1(a)(2) (West 2012).

¶ 14 The court in *People v. Smith*, 91 Ill. App. 3d 523, 526-29 (1980), adopted from New York and federal cases a test for whether the " 'carr[ying of] another from one place to another' " qualified for a separate charge of kidnapping. The Illinois Supreme Court later approved the *Smith* test:

> "Our appellate court has articulated factors to consider when determining whether
> an asportation or detention is merely ancillary to another offense, or whether it rises to

the level of an independent crime of kidnapping. These factors include: (1) the duration of the asportation or detention; (2) whether the asportation or detention occurred during the commission of a separate offense; (3) whether the asportation or detention is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225-26 (2009).

See *People v. Casiano*, 212 Ill. App. 3d 680, 687 (1991).

¶ 15    A Georgia court applied the same factors in circumstances similar to the circumstances here. The Georgia court found:

"the approximately fifteen-foot movement of the store employee to the safe, which was located in the same jewelry showroom, did not constitute the necessary asportation to support a kidnapping conviction. The movement was of minimal duration and occurred during the course of and incidental to the armed robbery and aggravated assault crimes. And it did not significantly increase the danger the employee already faced as a victim of armed robbery and aggravated assault. Accordingly, [the] conviction for kidnapping with bodily harm must be reversed." *Harper v. State*, 686 S.E.2d 375, 386 (Ga. Ct. App. 2009).

¶ 16    Similarly, the court in *Gray v. State*, 939 So. 2d 1095 (Fla. Dist. Ct. App. 2006) (*per curiam*), found no kidnapping when the defendant seized a convenience store clerk, dragged her to the store's office, dragged her to the store's front door, forced her to open the cash register, and told her to lie down. The victim's "confinement did not exceed the scope of the robbery." *Gray*, 939 So. 2d at 1097.

¶ 17    We find *Harper* and *Gray* persuasive. West pushed Cruz and X.M. a few feet through the currency exchange in the course of an attempt to rob the currency exchange. The movement took little time and did not significantly increase the dangers Cruz faced as a victim of attempted armed robbery and aggravated battery.

¶ 18    The State emphasizes that it charged West only with armed robbery of Cruz's keys and not with attempted armed robbery of the currency exchange. The prosecutor's charging decision did not alter the character and motivation of West's acts. The charging decision did not convert the attempted armed robbery into a kidnapping. We hold that the prosecution failed to prove an asportation that rises to the level required for an independent crime of kidnapping. We vacate the two convictions for aggravated kidnapping.

¶ 19                                B. Armed Violence

¶ 20    Next, West objects to the trial court's finding that the knife had a blade exactly three inches in length. West argues that the trial court conducted an improper private investigation and abandoned its role as a neutral arbiter. We find no evidence in the record to support the trial court's finding that the knife had a blade at least three inches in length.

¶ 21    Prosecutors charged West with committing armed violence by burglarizing the currency exchange "WHILE ARMED WITH *** A KNIFE WITH A BLADE OF AT LEAST 3 INCHES IN LENGTH." The prosecution "bears the burden of proving beyond a reasonable doubt each element of a charged offense." *People v. Brown*, 2013 IL 114196, ¶ 52. "Reversal for evidentiary insufficiency is required when the State fails to prove its case." *People v.*

*Cowans*, 336 Ill. App. 3d 173, 181 (2002). The prosecutor described the knife as about four inches long but presented no evidence of the length of the blade.

¶ 22    The State argues that we should affirm the conviction because the State could have charged West with armed violence in that he used a "deadly or dangerous weapon or instrument of [a] character" like that of a "dagger, dirk, [or] switchblade knife." See 720 ILCS 5/33A-1(c)(2) (West 2012). "A defendant in a criminal prosecution has a fundamental due process right to notice of the charges brought against him. [Citation]. For this reason, a defendant may not be convicted of an offense he has not been charged with committing." *People v. Kolton*, 219 Ill. 2d 353, 359 (2006). The State charged West with using a knife with a blade at least three inches long. It gave no notice of an intent to prove the use of a different dangerous weapon. The defense prepared for the charge, and correctly argued that the State failed to prove the charge. "The State may not offer a new theory of guilt for the first time on appeal. [Citation.] It would also be manifestly unfair to uphold a conviction based on a charge defendant was never given the opportunity to defend." *People v. Pendleton*, 307 Ill. App. 3d 966, 970 (1999); see *People v. Clark*, 2016 IL 118845, ¶ 38; *People v. Booker*, 2015 IL App (1st) 131872, ¶¶ 51-65.

¶ 23    The dissent relies on different grounds, not suggested by the State, for affirming the armed violence conviction. The dissent asserts that the knife itself, ostensibly measured by the trial judge, proves that West used a knife with a blade of at least three inches in length.

¶ 24    When the weight or length of objects forms an element of an offense, the State must introduce evidence to establish the measurement beyond a reasonable doubt. *People v. Jones*, 174 Ill. 2d 427, 428-29 (1996). Usually, the State establishes the measurement by presenting testimony from a person who made the measurement. See, *e.g.*, *People v. Robinson*, 167 Ill. 2d 397, 403 (1995). "The foundation regarding the weight of a substance is sufficiently proved if there is testimony verifying the accuracy of the scale used." *People v. Payne*, 239 Ill. App. 3d 698, 709 (1993). Courts have overturned convictions where the State failed to prove the reliability of scales used to weigh controlled substances. See, *e.g.*, *State v. Wallace*, 910 P.2d 695, 724-26 (Haw. 1996).

¶ 25    In limited circumstances, the trier of fact may infer that the quantity exceeds the statutory requirement without hearing testimony of a precise weight. "The weight of controlled substances may be proven by either evidence of its actual, measured weight or by demonstrating that the quantity is so large as to permit a reasonable inference that the element of weight has been established." *Boggs v. State*, 928 N.E.2d 855, 866 (Ind. Ct. App. 2010); see also *State v. Mitchell*, 442 S.E.2d 24, 27 (N.C. 1994).

¶ 26    In *McDaniels v. State*, 388 So. 2d 259 (Fla. Dist. Ct. App. 1980), the court addressed circumstances similar to this case. The State charged McDaniels with possession of a shotgun of less than 26 inches with a barrel length less than 18 inches.

¶ 27    When the trial concluded, the appellant moved to dismiss the charge of possession of a short-barreled shotgun because the State failed to introduce evidence regarding the length of the shotgun's barrel or the full length of the shotgun. The trial court denied the motion based on the rationale that the jury could look at the actual gun. The appellate court found:

> "Showing the length of the shotgun or its barrel is an essential element of possession of a short-barrelled shotgun and must be proved. [Citations.]
>
> Judicial notice may be taken of matters that are commonly known, but may not be used to dispense with proof of essential facts that are not judicially cognizable.

[Citations.] Without the assistance of testimony or a measuring device, we do not believe that the common person can look at a shotgun barrel that is about 16 inches in length and know to the exclusion of a reasonable doubt that the barrel is less than 18 inches. Nor do we believe that the common person can look at a shotgun that is approximately 25 inches in length and know to the exclusion of a reasonable doubt that it is less than 26 inches. Under these circumstances, the trial court abused its discretion in taking judicial notice of these unproved elements and we, therefore, reverse the judgment and sentence of the appellant for possession of a short-barrelled shotgun ***." *Id.* at 260-61.

¶ 28 Here, if indeed the court measured the knife's blade, it had no leeway in its measurement. With a misreading of the measurement by as little as one millimeter, the knife would not meet the statutory requirement for the crime charged. "[C]ourts may take judicial notice of matters which are commonly known or, if not commonly known, are readily verifiable from sources of indisputable accuracy." *People v. Henderson*, 171 Ill. 2d 124, 134 (1996). Applying the reasoning of *McDaniels*, we find the court erred by taking judicial notice of the blade's length, as the court could not establish the precise length to the millimeter as a matter of common knowledge or as a matter of a measurement of indisputable accuracy. Just as this court would not accept a trial court's assessment, without testimony, that a pile of methamphetamine weighed exactly 100 grams, this court must not accept the trial court's assessment, unsupported by the testimony, that the blade was three inches long, exactly at the statutory minimum to qualify for the crime charged.

¶ 29 The dissent cites *People v. Dread*, 27 Ill. App. 3d 106 (1975), and *People v. McCall*, 14 Ill. App. 3d 340 (1973), for the proposition that "a judge, sitting as the trier of fact, may inspect the instrumentality of an alleged crime and determine whether it is prohibited by Illinois statute." *Infra* ¶¶ 50-53. As the dissent acknowledges, those cases are distinguishable. The panels in *Dread* and *McCall* did not affirm based on the sufficiency of the evidence produced in the trial court—both panels conducted their own investigation of the length of a sawed-off shotgun. *Dread*, 27 Ill. App. 3d at 112; *McCall*, 14 Ill. App. 3d at 342. In fact, the panel in *Dread* went so far as to order the production of the shotgun as an exhibit on appeal, despite counsel's failure to include it in the record. *Dread*, 27 Ill. App. 3d at 112.

¶ 30 Our review indicates that neither *Dread* nor *McCall* have ever been cited for this portion of their analyses—appellate justices conducting factfinding. Apparently, these cases are nothing more than jurisprudential dalliances by common members of both panels. See *id.* (panel consisting of Presiding Justice Downing and Justices Stamos and Leighton); *McCall*, 14 Ill. App. 3d at 342 (panel consisting of Justices Hayes, Leighton, and Downing).

¶ 31 More importantly, however, the dissent openly admits that "the State failed to present any positive evidence" about the length of the shotgun in *McCall*. *Infra* ¶ 50. In other words, the only evidence of the shotgun's length came from an inappropriate appellate investigation of a trial exhibit. Similarly, there is no positive evidence about the length of the knife's blade. Even if we were to condone judicial investigations by the trial court (as opposed to the appellate court), there is nothing in the record that the trial court did an investigation. The trial court apparently looked at the knife and declared it to be exactly three inches without making any distinction between hilt, blade, or both. The trial court's declaration is not evidence.

¶ 32 The State has the burden to prove each element of its case against the defendant beyond a reasonable doubt. The due process clause guarantees a criminal defendant the right to a fair

and impartial judge. See *In re Murchison*, 349 U.S. 133, 136 (1955). It is not the trial judge's role to assist the prosecution where the prosecutor fails to offer evidence on an element of the offense charged.

¶ 33 In a petition for rehearing the State contends, without citation, that the knife itself and a photograph of the knife constitute sufficient evidence of the blade's length and, therefore, this court should remand for retrial. Here, as in *McDaniels*, the State failed to present any measurement of the weapon. The trier of fact had no basis on which it could conclude beyond a reasonable doubt that the knife had a blade at least three inches long. Proof of an "essential element[ ] cannot be based on 'conjecture and speculation.' " *People v. Gillespie*, 276 Ill. App. 3d 495, 499 (1995). Where the State has failed to prove an element of the offense charged, this court must reverse the conviction without remand for retrial. *People v. Davis*, 50 Ill. App. 3d 163, 168-69 (1977). Applying the reasoning of *McDaniels*, we reverse the conviction here without remand.

¶ 34 Because the State failed to prove armed violence as charged in the indictment, we vacate the armed violence conviction.

¶ 35 C. Sentencing

¶ 36 We reverse the convictions and sentences for kidnapping and armed violence. "As we cannot determine with any degree of certainty whether or not the conviction[s] vacated herein may have influenced the circuit court in imposing sentences for the remaining convictions of [armed robbery] and aggravated battery, the sentence[s] should be considered in a new hearing." *People v. Figures*, 216 Ill. App. 3d 398, 404 (1991). The trial court on remand will have the opportunity to correct its assessments of fines, fees, and costs.

¶ 37 III. CONCLUSION

¶ 38 The evidence that West pushed Cruz and X.M. a few feet through the currency exchange in the course of an attempted armed robbery does not show the asportation required for the kidnapping charge. No evidence supports the trial court's finding that the knife had a blade three inches long. Accordingly, we vacate the convictions for aggravated kidnapping and armed violence. We affirm the uncontested convictions for armed robbery and aggravated battery. Because we cannot determine the effect of the reversed convictions on the sentences for the affirmed convictions, we remand for resentencing on the affirmed convictions.

¶ 39 Affirmed in part, reversed in part, and remanded.

¶ 40 PRESIDING JUSTICE GRIFFIN, concurring in part and dissenting in part:

¶ 41 I agree with the majority that the State failed to prove the element of asportation beyond a reasonable doubt (see *supra* ¶ 18) and defendant's convictions for aggravated kidnapping must be reversed (720 ILCS 5/10-2(a)(4) (West 2012)). But in addition to that point, the trial record fails to establish that defendant acted with the intent to secretly confine the victims against their will. See *id.* § 10-1(a)(2) ("[a] person commits the offense of kidnapping when he or she knowingly: *** (2) by force or threat of imminent force carries another from one place to another with intent secretly to confine that other person against his or her will"). The record

makes clear that defendant forced the victims toward the back room of the currency exchange to access the money and steal it, not to secretly confine the victims there.

¶ 42    Moreover, victim Gloria Cruz testified at trial that "[defendant] wanted to get in the back room" and, after she closed the gate, he was "unable to get in." Defendant then left the currency exchange. It is unreasonable to conclude that defendant's criminal objective was achieved when Cruz locked herself and her son in the "cage" and locked defendant out. Accordingly, I would find that no rational trier of fact could view the evidence in this case and conclude beyond a reasonable doubt that defendant intended to secretly confine the victims against their will. See *People v. Nere*, 2018 IL 122566, ¶ 69.

¶ 43    I respectfully dissent, however, with regard to the majority's reversal of defendant's conviction for armed violence (see 720 ILCS 5/19-1(a), 33A-2(a) (West 2012)). The majority finds "no [admissible] evidence in the record to support the trial court's finding that the knife had a blade at least three inches in length" (*supra* ¶ 20) and concludes that "[n]o evidence supports the trial court's finding that the knife had a blade three inches long" (*supra* ¶ 38). The majority vacates defendant's conviction.

¶ 44    I disagree with the majority's finding and its conclusion. The evidence presented in this case was clearly sufficient to convict defendant of armed violence (720 ILCS 5/19-1(a), 33A-2(a) (West 2012)), and the majority's decision is inconsistent with Illinois law. Accordingly, I would affirm defendant's conviction.

¶ 45    The record establishes that on the morning of November 9, 2013, defendant entered the currency exchange through the ceiling, placed a knife to Cruz's chin, and forcibly moved her and her son towards the back room to gain access to the money and steal it. Defendant's knife was recovered by police at the scene and later introduced and admitted into evidence at defendant's bench trial. On direct examination, Cruz identified the knife and gestured with her fingers as to its length, and the prosecutor described the gesture in terms of inches:

> "MS. MESCALL [(ASSISTANT STATE'S ATTORNEY)]: Do you recognize this knife?
>
> GLORIA CRUZ: Yes.
>
> Q: Can you tell the Judge how you're able to recognize it?
>
> A: Because it was about that short.
>
> MS. MESCALL: May the record reflect that witness is making approximately four inches with her fingertips?
>
> THE COURT: It may.
>
> GLORIA CRUZ: Yes.
>
> MS. MESCALL: And what was that short, that you're showing with your fingertips?
>
> GLORIA CRUZ: The knife, because he held it this way, and it was about that partial when he had it up to my side of my jaw like."

¶ 46    There was no objection to this testimony, nor any cross-examination regarding the size of the knife's blade. However, during closing argument, defense counsel argued that the State failed to prove that the knife had a blade of at least three inches in length. See 720 ILCS 5/33A-1(c)(2) (West 2012) ("[a] Category II weapon is *** [a] knife with a blade of at least 3 inches in length"); *id.* § 33A-2(a). The trial court rejected the argument. As the trier of fact, the trial

court determined that the blade of the knife was "exactly three inches long" and found defendant guilty of armed violence. *Id.* §§ 19-1(a), 33A-2(a).

¶ 47      The majority finds that "[Cruz] did not testify as to the length of the knife's blade" (see *supra* ¶ 6) and "[t]he prosecutor described the knife as about four inches long but presented no evidence of the length of the blade" (see *supra* ¶ 21). But the victim's gesture cannot be deciphered on this cold record. The length between her fingertips could have referred to the blade, the handle, or both. The majority's affirmative finding that the gesture did not refer to the blade is pure speculation. It is also unnecessary, given the trial court's observation of Cruz's testimony, its inspection of the knife, and the factual determination made that the length of the blade was "exactly three inches long."

¶ 48      The majority also finds "no [admissible] evidence in the record to support the trial court's finding that the knife had a blade at least three inches in length" (see *supra* ¶ 20). The statement begs the question of whether the trial court judge relied on inadmissible evidence to find that the knife met the statutory definition of a "dangerous weapon." 720 ILCS 5/33A-1(c) (West 2012)). The majority does not identify any inadmissible evidence in its opinion.

¶ 49      Nevertheless, on a bench trial, when the judge sits as the trier of fact, "a reviewing court presumes that the trial court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion." *People v. Naylor*, 229 Ill. 2d 584, 603 (2008). The presumption can be rebutted through affirmative evidence in the record. *People v. Jackson*, 409 Ill. App. 3d 631, 647 (2011). Unless the majority believes that the trial judge abused his discretion when he admitted the knife into evidence at trial without objection, the presumption goes unrebutted and the trial court's findings were properly based on its consideration of the evidence. See *People v. Schultz*, 99 Ill. App. 3d 762, 772-73 (1981) (it is well established that the trial judge, as trier of fact, can examine the physical evidence introduced at trial (citing *People v. Gilbert*, 68 Ill. 2d 252 (1977))).

¶ 50      It is axiomatic that a judge, sitting as the trier of fact, may inspect the instrumentality of an alleged crime and determine whether it is prohibited by Illinois statute. For instance, in *People v. McCall*, 14 Ill. App. 3d 340 (1973), the court affirmed a defendant's conviction for possessing two "sawed-off" shotguns even though the State failed to present any positive evidence that the shotguns had barrels less than 18 inches in length. See Ill. Rev. Stat. 1969, ch. 38, ¶ 24-1(a)(7). The trial court held that the evidence was sufficient to convict the defendant of unlawful use of weapons because (1) the sawed-off shotguns were introduced into evidence, (2) viewed by the trial court, and (3) considered in conjunction with relevant testimony of the police officers. *McCall*, 14 Ill. App. 3d at 342.

¶ 51      Specifically, the court stated that

> "the shotguns were introduced in evidence and, therefore, were before the eyes of the trial judge. By observation, he could determine that they were sawed-off shotguns and that they were less than 18 inches in length. Further, when the trial judge found the defendant guilty of the unlawful use of weapons, he necessarily determined that the barrels of the sawed-off shotguns were less than 18 inches in length." *Id.* at 341.

¶ 52      Similarly, in *People v. Dread*, 27 Ill. App. 3d 106 (1975), the court affirmed the defendant's unlawful use of weapons conviction even though the State failed to properly describe the shotgun for the record when it was admitted into evidence at trial. The court simply found that "it is permissible to assume the experienced trial judge was satisfied that the shotgun complied with the statute before there was a finding of guilty." *Id.* at 112.

¶ 53 It is important to note that the reviewing judges in *McCall* and *Dread* inspected the weapons in the record themselves and determined that the weapons met the relevant statutory requirements. The appellate court in *McCall* inspected one of the shotguns and determined "by observation and measurement" that its barrel was less than 18 inches in length. 14 Ill. App. 3d at 342. The appellate court in *Dread* directed the parties to file the exhibit and stated that "[o]ur personal inspection clearly establishes the fact that the barrel is less than 18 inches in length." 27 Ill. App. 3d at 112. Given the record in this case, there is, of course, no need for us to inspect the knife on appeal.

¶ 54 I would affirm defendant's conviction for armed violence (720 ILCS 5/19-1(a), 33A-2(a) (West 2012)). The majority's decision in this case is at odds with Illinois law, and when the evidence is viewed in the light most favorable to the State, a rational trier of fact could have found the essential elements of armed violence, as charged, beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 55 I respectfully dissent.