2026 IL App (1st) 231121-U

No. 1-23-1121

Order filed March 27, 2026

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of Cook County, |
| Plaintiff-Appellee, | ) | Criminal Division. |
| | ) | |
| v. | ) | No. 10 CR 14611 |
| | ) | |
| GENGHIS ANDERSON, | ) | Honorable |
| | ) | William J. Kunkle, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The evidence was insufficient to support defendant's conviction for aggravated kidnapping independent of armed robbery. Defendant's trial attorney was effective where he mitigated prejudice against defendant by stipulating to the qualifying offenses for the armed habitual criminal charge despite not moving to sever the charge. The circuit court did not abuse its discretion in sentencing defendant. Illinois's armed habitual criminal statute is constitutional on its face and as applied to defendant.

¶ 2    Following a jury trial, defendant Genghis Anderson was convicted of armed robbery (720 ILCS 5/18-2(a)(2) (West 2010)), aggravated kidnapping (*id.* § 10-2(a)(6)), and being an armed habitual criminal (*id.* § 24-1.7(a)(2)-(3)). He was sentenced to concurrent terms of 35 years' imprisonment on the armed robbery and aggravated kidnapping charges and 30 years'

imprisonment on the armed habitual criminal charge. At issue is (1) whether there was sufficient evidence for a rational jury to find that defendant committed aggravated kidnapping independent of the commission of the armed robbery; (2) whether defendant's trial attorney was ineffective for not moving to sever defendant's armed habitual criminal charge from the other charges; (3) whether the circuit court abused its discretion when it sentenced defendant to concurrent terms of 35 and 30 years' imprisonment; and (4) whether Illinois's armed habitual criminal statute is unconstitutional on its face and as applied to defendant. For the following reasons, we reverse defendant's conviction for aggravated kidnapping, remand for the circuit court to modify defendant's sentence consistent with this order, and affirm in all other respects.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant Genghis Anderson was charged with armed robbery (720 ILCS 5/18-2(a)(2) (West 2010)), aggravated kidnapping (*id.* § 10-2(a)(6)), and being an armed habitual criminal (*id.* § 24-1.7(a)(2)-(3)). The case proceeded to a jury trial, and the evidence at trial showed the following. Around 2:40 a.m. on July 13, 2010, Dewayne Washington drove to a nightclub and parked his car in the back of an adjacent lot. As Washington walked towards the nightclub, he saw a white Ford Taurus parked in the lot. The driver of the Taurus was standing next to the vehicle, and Washington started a conversation with him. The driver pulled out a gun, pressed it against Washington's stomach, and demanded money. Washington complied. At the driver's instruction, Washington walked to the passenger side of the vehicle and the driver followed. As they approached, defendant Genghis Anderson emerged from the passenger seat.

¶ 5     Defendant was holding a gun and told Washington to go lie on the ground between two cars at the back of the lot. Defendant pointed the gun at Washington's head as Washington walked

around 10 feet to the cars while defendant and the driver followed. Once Washington was on the ground, defendant told him to put his head underneath the hood of the car. Defendant pressed his gun to Washington's temple and ordered Washington to give defendant his chain necklace and cell phone. Washington obeyed. Defendant told Washington to count to 100, and defendant and the driver returned to their car and drove off. After they left, Washington contacted the police who later apprehended defendant. Police recovered Washington's property from inside the Taurus.

¶ 6    At trial, the parties stipulated that defendant had two prior qualifying offenses to support the armed habitual criminal charge. At the close of the State's case, defendant's attorney moved for a directed finding arguing the State did not prove kidnapping. After reserving its ruling pending further argument, the circuit court denied the motion, concluding the issues were factual questions for the jury. The jury found defendant guilty of all three charges. After a sentencing hearing, the circuit court sentenced defendant to 35 years' imprisonment for armed robbery and aggravated kidnapping and 30 years' imprisonment for the armed habitual criminal charge, to be served concurrently.

¶ 7    In 2016, defendant filed a *pro se* postconviction petition alleging his trial counsel was ineffective for not filing a notice of appeal. On May 5, 2023, the circuit court granted defendant relief on his postconviction petition, allowing him to file a late notice of appeal. See *People v. Ross*, 229 Ill. 2d 255, 271 (2008) ("We hold that when a postconviction petitioner demonstrates that defense counsel was ineffective for failing to file a notice of appeal, the trial court may allow the petitioner leave to file a late notice of appeal."); see also *People v. Bond*, 405 Ill. App. 3d 499, 504 (2010) ("Following the supreme court's reasoning in *Ross*, we find we have jurisdiction to hear defendant's appeal."). On June 2, 2023, notice of appeal was filed, and on August 28, 2024,

this court allowed defendant to amend the notice. Ill. S. Ct. R. 606 (eff. Apr. 15, 2024). This appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9                            A. Aggravated Kidnapping

¶ 10    Defendant argues the State failed to prove him guilty of aggravated kidnapping. Specifically, defendant argues the asportation, or carrying away, of Washington was incidental to the armed robbery so was insufficient to support an independent conviction for kidnapping. The State contends that it proved defendant guilty of aggravated kidnapping beyond a reasonable doubt because the evidence sufficiently showed the asportation was a distinct criminal act. "In reviewing the sufficiency of the evidence to sustain a verdict on appeal, the relevant inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cooper*, 194 Ill. 2d 419, 430-31 (2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

¶ 11    Section 10-1(a) of the Criminal Code of 1961 recognizes three forms of kidnapping:

"A person commits the offense of kidnapping when he or she knowingly:
    (1) and secretly confines another against his or her will;
    (2) by force or threat of imminent force carries another from one place to another with intent secretly to confine that other person against his or her will; or
    (3) by deceit or enticement induces another to go from one place to another with intent secretly to confine that other person against his or her will." 720 ILCS 5/10-1-(a) (West 2010).

"Thus, a defendant can commit kidnapping by confinement, asportation, or inducement." *People v. Ayoubi*, 2020 IL App (1st) 180518, ¶ 41. Here, defendant was indicted for aggravated kidnapping based on asportation: "carr[ying] Dewayne Washington from one place to another."

See 720 ILCS 5/10-1(a)(2) (West 2010).

¶ 12    When an act satisfies the literal language of the kidnapping statute but is "in essence" a different crime and lacks "a genuine kidnapping flavor," the act is insufficient to support a kidnapping conviction. (Internal quotation marks omitted.) See *People v. Smith*, 91 Ill. App. 3d 523, 527-29 (1980) ("[T]here is an inequity inherent in permitting kidnapping prosecutions of those who, in reality, committed lesser or different offenses, of which temporary seizure, asportation or detention played an incidental part."). Thus, "a defendant cannot be convicted of kidnapping if asportation or confinement of the victim was incidental to another crime." *Ayoubi*, 2020 IL App (1st) 180518, ¶ 46. To determine whether an asportation rises to an independent crime of kidnapping or is merely incidental to another offense, the Illinois Supreme Court adopted four factors to consider: "(1) the duration of the asportation or detention; (2) whether the asportation or detention occurred during the commission of a separate offense; (3) whether the asportation or detention is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225-26 (2009) (adopting factors articulated in *Smith*, 91 Ill. App. 3d at 527-29).

¶ 13    Here, the asportation was merely incidental to the armed robbery, and thus, the evidence was insufficient to support an independent offense of kidnapping. The first factor is the duration of the asportation. *Smith*, 91 Ill. App. 3d at 529. Defendant's entire interaction with Washington, which included the driver talking to Washington and taking his money, only lasted between 5 and 8 minutes. During the robbery, defendant instructed Washington to walk about 10 feet back toward his car. Photographs of the parking lot indicate that Washington moved from one position in a

small parking lot to another. The robbery was so brief, and the movement itself so limited, that the incident lacks "a genuine kidnapping flavor." (Internal quotation marks omitted.) See *Smith*, 91 Ill. App. 3d at 527-29 (concluding there was no independent kidnapping offense where, after the victim's car was stolen, the "victim was driven for a short distance-approximately 20 minutes from where he first encountered defendants"); see also *People v. Short*, 2020 IL App (1st) 162168, ¶¶ 21-26, 89 (holding there was no kidnapping where the robbery lasted around 10 minutes and the victim was dragged a few feet to a back room); *People v. West*, 2019 IL App (1st) 162400, ¶ 1 ("We hold that pushing the victims a few feet in the course of an attempted armed robbery did not meet the asportation element for the kidnapping charges."); *People v. Black*, 2020 IL App (1st) 171819-U, ¶ 46 (holding there was no kidnapping where it "could have taken no more than a few seconds to move the six to ten feet from the sidewalk to the tree").

¶ 14 The second factor is whether the asportation occurred during the commission of a separate offense. *Smith*, 91 Ill. App. 3d at 529. Here, the movement occurred during an ongoing robbery. Thus, the asportation occurred during a separate offense and was not an independent criminal act. The third factor to consider is whether the asportation is inherent in the separate offense. *Id.* While asportation is not an element of armed robbery (720 ILCS 5/18-1(a), 18-2(a)(2) (West 2010)) and does not otherwise seem inherent or necessary to the offense, we do not find this dispositive considering the strength of the other three factors.

¶ 15 The fourth and last factor is "whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense." (Internal quotation marks omitted.) *Smith*, 91 Ill. App. 3d at 529. Here, Washington's movement from one part of a public parking lot to another spot 10 feet away did not create any significant danger to Washington

independent of the danger he already faced from being robbed at gunpoint. See *West*, 2019 IL App (1st) 162400, ¶¶ 15, 17 ("The movement took little time and did not significantly increase the dangers Cruz faced as a victim of attempted armed robbery and aggravated battery."); *People v. Lamkey*, 240 Ill. App. 3d 435, 437, 440 (1992) (holding that a two minute asportation where the victim was grabbed and pulled a few feet from the sidewalk did not pose "a more significant danger to the victim than that already posed by the sexual assault"); *cf. People v. Ware*, 323 Ill. App. 3d 47, 56 (2001) ("In particular, a significant and independent danger arises where the victim is forced out of a public area and into a locked bathroom."); *People v. Casiano*, 212 Ill. App. 3d 680, 688 (1991) ("A significant danger arose from [being moved 1½ blocks at knifepoint], and also from the potential of more serious criminal activity due to the privacy of defendant's apartment."); *People v. Lurks*, 241 Ill. App. 3d 819, 826 (1993) ("Finally, forcing an unwilling D.M. into the alley and into the garage posed a significant danger to her separate from that posed by the sexual assault.").

¶ 16     Even considering Washington was made to lay on the ground of the parking lot between two cars, Washington was still visible to the public and significantly less hidden than if he were moved to a locked bathroom, apartment, or garage. See *id.*; see also *Black*, 2020 IL App (1st) 171819-U, ¶ 40 ("We cannot say the area behind the tree six feet from the sidewalk was 'more secluded and private' or involved a 'heightened' danger that no one would see or hear what was transpiring than was involved in the sexual assault had defendant not moved [the victim] behind the tree but chose to remain on or near the sidewalk adjacent the park at 2 a.m."). Ultimately, "[i]t is clear that the gist of the case before us is a robbery." *Smith*, 91 Ill. App. 3d at 529.

¶ 17    The State argues that the asportation was an independent criminal act because it did not occur during the commission of an ongoing robbery but rather occurred in between two separate robberies, one by the driver and one by defendant. We reject this contention. Washington testified that after the driver took his money, he followed Washington around the car to defendant, and both the driver and defendant followed Washington while he walked 10 feet back toward his car. Washington's testimony suggests one continuing course of conduct. Further, at trial, the State characterized the driver and defendant as "co-offenders," legally responsible for each other's actions, yet defendant was charged with only one count of armed robbery. For support that there were "two separate acts of robbery," the State cites *Lurks*, 241 Ill. App. 3d at 826. In that case, the defendant was taken "to a nearby abandoned building and up three flights to an apartment" where she was "repeatedly raped *** for more than an hour" in between the "two" robberies. *Id.* at 820, 826. Where Washington and defendant's entire street-side parking lot encounter lasted less than 10 minutes at most, the facts are readily distinguishable.

¶ 18    "Where it is determined that the asportation was only for a short period of time, occurred during the commission of a separate offense, and offered no significant danger to the victim independent of that posed by the felony, an aggravated kidnapping charge should not rest." *Smith*, 91 Ill. App. 3d at 529. Thus, we reverse defendant's aggravated kidnapping conviction and remand for the circuit court to modify defendant's sentence consistent with this order.

¶ 19                        B. Ineffective Assistance of Counsel

¶ 20    Defendant argues his trial attorney was ineffective because he did not move to sever the armed habitual criminal charge from the other charges, and defendant was prejudiced when the jury heard he had two prior felony convictions. The State contends that defendant's attorney

pursued a legitimate trial strategy, and defendant was not prejudiced. To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For counsel's performance to be deficient, it must be "objectively unreasonable under prevailing professional norms." *People v. Domagala*, 2013 IL 113688, ¶ 36. When, as here, the ineffective assistance of counsel claim was not raised in the circuit court, we review *de novo*, *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24, with "a strong presumption that counsel's conduct fell into a wide range of reasonable representation." *People v. Cloutier*, 191 Ill. 2d 392, 402 (2000). It is the defendant's burden to overcome the "presumption that the challenged action or lack of action might be the product of sound trial strategy." (Internal quotation marks omitted.) *People v. Gacy*, 125 Ill. 2d 117, 125 (1988).

¶ 21    Multiple offenses may be charged together if they are "based on the same act or on 2 or more acts which are part of the same comprehensive transaction." 725 ILCS 5/111-4(a) (West 2010). However, if a single proceeding would result in prejudice, a party may move to sever the charges. *Id.* § 114-8(a). "Generally, a defense decision not to seek a severance, although it may prove unwise in hindsight, is regarded as a matter of trial strategy." *People v. Poole*, 2012 IL App (4th) 101017, ¶ 10. Defense counsel may pursue an "all or nothing" strategy in which they seek to have the defendant acquitted of all charges in a single proceeding. *People v. Fields*, 2017 IL App (1st) 110311-B, ¶ 28. This can include a charge which requires proof of prior convictions, such as an armed habitual criminal charge. See *id.* ¶¶ 1, 27-28. While pursuing an "all or nothing" trial strategy, defense counsel can mitigate prejudice against the defendant by stipulating to the prior qualifying convictions. *Fields*, 2017 IL App (1st) 110311-B, ¶ 28; see *People v. Walker*, 211 Ill.

2d 317, 338 (2004) ("[T]he defendant's admission or stipulation is conclusive evidence of felon status which presents little or no risk of unfair prejudice."). In such a case, counsel's decision not to move to sever the charges is strongly presumed to be sound trial strategy and not deficient performance. See *Fields*, 2017 IL App (1st) 110311-B, ¶ 28; *People v. Schmittler*, 2025 IL App (5th) 230269-U, ¶ 50; *People v. Salgado*, 2022 IL App (2d) 200537-U, ¶ 46; *People v. Wright*, 2023 IL App (4th) 220499-U, ¶¶ 80-81.

¶ 22    Here, defendant's attorney did not seek to sever the armed habitual criminal charge from the other charges. The record suggests that counsel's strategy at trial was an "all or nothing" defense in which he argued the State's evidence was too weak to prove defendant was the perpetrator or that he possessed the gun:

> So, basically ladies and gentlemen, you have nothing to corroborate this victim. And as I say again, no fingerprints, no DNA [on the gun]. Just one man saying, "He robbed me," but he couldn't even describe his height or his weight or his complexion or what he looked like or what he was wearing. That shouldn't be enough, should it?
>
> ***
>
> This man could not identify anybody. He could not even give a description. Not even anything other than a male Black. Is that enough to convict somebody? No, ma'am, no, sir, not at all.

See *People v. Hibbler*, 2021 IL App (4th) 200022-U, ¶ 125 (explaining counsel's efforts to show defendant was not the shooter and did not possess a weapon indicated an "all or nothing" trial strategy); see also *Salgado*, 2022 IL App (2d) 200537-U, ¶ 46 (same).

¶ 23    While pursuing an "all or nothing" strategy, counsel stipulated to the fact that defendant had two qualifying predicate offenses for the armed habitual criminal charge, minimizing prejudice to defendant even though counsel did not seek to sever the charge. Given counsel's actions in mitigation and his apparent trial strategy, defendant has not overcome the strong presumption that

counsel's inaction was strategic. *Gacy*, 125 Ill. 2d at 126 ("The burden of proving incompetence, and of overcoming the presumption that an attorney's decision is the product of 'sound trial strategy,' rests upon the defendant, not the State.").

¶ 24　Defendant argues that under *People v. Utley*, 2019 IL App (1st) 152112, ¶¶ 44-49, this case should be reversed because the record does not reveal counsel's conscious awareness of the risks involved in the jury learning of defendant's prior convictions. But the fact that counsel stipulated to the qualifying predicate offenses, so the jury would not know the nature of defendant's previous charges or hear evidence to prove them, indicates counsel was aware of the risk to defendant and attempted to minimize it. See *id.* ¶ 48 ("Unlike counsel in *Fields*, counsel here made no attempt to minimize the prejudice to defendant in lieu of filing a motion to sever, by either filing a motion *in limine* or by offering to stipulate to the fact of defendant's predicate felonies."). Additionally, defendant argues that the motion to sever likely would have been granted by the circuit court, so counsel was deficient for not moving. Even if the motion would have been granted, however, it can still be sound trial strategy not to seek severance. See *Poole*, 2012 IL App (4th) 101017, ¶ 10; *Fields*, 2017 IL App (1st) 110311-B, ¶¶ 27-28.

¶ 25　Defendant has not shown counsel's performance was deficient, so we need not reach the issue of prejudice, and defendant's ineffective assistance of counsel claim fails. See *Poole*, 2012 IL App (4th) 101017, ¶ 8 ("A defendant's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats his ineffectiveness claim.").

¶ 26　　　　　　　　　　　　　　C. Sentencing

¶ 27　As to defendant's remaining charges, defendant was sentenced to 35 years' imprisonment for armed robbery and 30 years' imprisonment for the armed habitual criminal charge. Defendant

argues his sentence is excessive considering mitigating factors. We review the circuit court's sentence for abuse of discretion. *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 28　The Illinois Constitution provides that criminal penalties are to be determined by "the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. Perruquet*, 68 Ill. 2d 149, 154-55 (1977). This requires balancing the retributive and rehabilitative purposes of punishment and carefully considering all aggravating and mitigating factors. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). Circuit courts are given great deference in their sentencing decisions because they are in a better position to observe the defendant and consider the various factors. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). "Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." (Internal quotation marks omitted.) *Id.* at 213.

¶ 29　At the sentencing hearing, the circuit court walked through numerous statutory mitigating factors, 730 ILCS 5/5-5-3.1(a) (West 2014), and considered them along with aggravating factors before imposing the sentence:

> I've considered your presentence investigation as well as what you've had to tell me today, as well as the statutory factors in aggravation and mitigation. ***And when I look at those factors in mitigation, even though *** you do not have crimes of violence in your background, you certainly have prior felony convictions. And by my count I have seven. *** And [defense counsel] is right, the victim was not shot in this case; but he did have a gun put to his head. He was threatened with violence.
>
> ***
>
> The PSI also says that you have never been employed. ***And the fact that you grew up in the Robert Taylor Homes is not an excuse to become a criminal. ***You, as the PSI said, had the support of your family. You're telling me you're a religious person, and yet you put all of that aside to stick people up and take things that do not belong to you.

\*\*\*

In addition to the time line that the State pointed out, you were, in fact, on parole for a felony when you committed this offense, which the flip side of all of these things that I don't see in mitigation is that they truly are factors in aggravation. And I have considered each one of these factors in mitigation individually, including the ones I haven't gone through, as well as all of the factors in aggravation.

And at this time, Mr. Anderson, I am going to sentence you to 30 years on the armed habitual criminal count. That will be served at 85 percent. 35 years on the armed robbery and the aggravated kidnapping. Those are served concurrently. The armed robbery is a 50 percent credit, and the aggravated kidnapping will be at 85 percent.

For armed robbery, defendant faced a sentencing range of 21 to 45 years due to a firearm enhancement. 730 ILCS 5/5-4.5-25(a) (West 2014) (Class X term); 720 ILCS 5/18-2(b) (armed robbery). For this offense, defendant received a 35-year sentence which is within the sentencing range. Given the aggravating factors discussed by the circuit court, this sentence was not excessive. See *People v. Stacey*, 193 Ill. 2d 203, 210 (explaining a sentence within the statutory range is excessive "where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense"). For the armed habitual criminal charge, defendant faced a sentencing range of 6 to 30 years. 730 ILCS 5/5-4.5-25(a) (Class X term); 720 ILCS 5/24-1.7(b) (armed habitual criminal). Defendant received the maximum of 30 years to be served concurrently with his 35-year sentence. Considering the aggravating factors, this is not excessive. See *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19 ("The trial court is not obligated to reduce a sentence from the maximum allowed simply because mitigating factors are present.").

¶ 30    Defendant argues that several mitigating factors make his sentence excessive including his history of only nonviolent offenses, strong family ties, employment, and the fact that the victim suffered no physical harm. The circuit court, however, explicitly considered and addressed all

these facts when imposing defendant's sentence. See *People v. Barnes*, 2017 IL App (1st) 143902, ¶ 95 ("It is not our function to independently reweigh these factors and substitute our judgment for that of the trial court."). Although defendant points to other facts not explicitly addressed by the circuit court, such as defendant's age at the time of the offense, the circuit court is presumed to have "considered all of the factors unless the record indicates to the contrary." *People v. Jackson*, 375 Ill. App. 3d 796, 802 (2007); see *People v. Burton*, 184 Ill. 2d 1, 34 (1998) ("The fact that a court expressly mentions a factor in mitigation does not mean the court ignored other factors."). The circuit court's extensive discussion of mitigating factors, which included statements that it considered all factors beyond those discussed on the record, supports this presumption. The circuit court did not abuse its discretion in sentencing defendant to concurrent terms of imprisonment of 30 and 35 years.

¶ 31 Additionally, defendant argues he should be resentenced on his armed robbery and armed habitual criminal convictions since we cannot determine whether defendant's now reversed conviction and sentence for aggravated kidnapping may have influenced the circuit court's sentence on the other convictions. However, where, as here, the "circuit court sentenced defendant separately on each conviction, and the record does not otherwise show that the court considered the vacated convictions in imposing sentence[s] on the remaining conviction[s]," "we need not remand the cause for resentencing." *People v. Maggette*, 195 Ill. 2d 336, 354-55 (2001).

¶ 32          D. Constitutionality of the Armed Habitual Criminal Statute

¶ 33 Defendant argues that the armed habitual criminal statute, 720 ILCS 5/24-1.7(a) (West 2010), is unconstitutional on its face and as applied to defendant under the second amendment of the United States Constitution and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1

(2022). In *Bruen*, the Supreme Court established a two-step test for evaluating statutes that regulate firearms. *Id*. at 24. The first step is to determine whether the plain text of the second amendment covers an individual's conduct. *Id.* If this step is met, "the Constitution presumptively protects that conduct." *Id.* The government must then, in the second step, "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* This requires pointing to historical precedent that indicates a comparable tradition of regulation. *Id.* at 26-27.

¶ 34   Defendant argues that his conduct is covered by the plain text of the second amendment, so it is presumptively protected by the Constitution under the first step. However, as defendant concedes, this Court has held that the second amendment does not protect felons under *Bruen*, even if they are only nonviolent offenders. *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37, *pet. for leave to appeal pending*, No. 130174 (filed Nov. 3, 2023) ("The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant."); see *People v. Lopez*, 2025 IL App (1st) 232120, ¶¶ 22, 24-27 (holding the armed habitual criminal statute is constitutional on its face "because the second amendment only protects the right of law-abiding citizens to bear arms" and holding defendant's as applied challenge failed "because a felon's status as violent or nonviolent is inconsequential"). We are unpersuaded by defendant's argument that these cases should be reconsidered in light of cases from the Northern District of Illinois and other jurisdictions interpreting a federal statute. See *Rockford Police Benevolent & Protective Ass'n, Unit No. 6 v. Morrissey*, 398 Ill. App. 3d 145, 153 (2010) (explaining that federal district court

cases are not binding on state courts and Illinois statutes may be subject to different interpretations than federal statutes).

¶ 35    Defendant also argues that the State cannot meet its burden under the second step to show that the armed habitual criminal statute is consistent with historical tradition. In *People v. Macias*, 2025 IL App (1st) 230678, ¶ 34, *pet. for leave to appeal pending*, No. 132054 (filed Sept. 3, 2025), however, this Court held that the armed habitual criminal statute satisfied the second prong of *Bruen* because historical laws disarmed groups based on the legislature's determination that they were dangerous. See *Lopez*, 2025 IL App (1st) 232120, ¶ 23, *pet. for leave to appeal pending*, No. 131973 (filed June 26, 2025) (collecting Illinois appellate cases that held that "the armed habitual criminal and unlawful use of a weapon by a felon statutes *** were consistent with the United States' historical tradition of firearm regulation [citations] and, therefore, facially constitutional"). We continue to follow *Macias* and *Lopez*.

¶ 36                                    III. CONCLUSION

¶ 37    Defendant's conviction for aggravated kidnapping is reversed, and we remand for the circuit court to modify defendant's sentence consistent with this order. The judgment of the circuit court of Cook County is affirmed in all other respects.

¶ 38    Reversed in part, and remanded with directions to modify sentence; affirmed in part.